## Sloan's Estate.

*Decedents' estates—Wills—Corporation stock—Surplus profits—Dividends—Dispute between life-tenant and remainderman.*

When the stock of a corporation is bequeathed in trust for the use of a beneficiary for life with remainder over, surplus profits accumulated during the testator's life, but not divided until after his death, belong to the corpus of his estate, while dividends of earnings made after his death, whether in cash, script or stock, are income and are payable to the life-tenant.

Argued May 7, 1917. Appeal, No. 102, Jan. T., 1917, by Clarence S. Gilmore, Executor of the Estate of Jessie Sloan, Deceased, from decree of O. C. Fayette Co., March T., 1914, No. 18, granting supplemental review of Executors' account in Estate of William Sloan, Deceased. Before Brown, C. J., Mestrezat, Stewart, Frazer and Walling, JJ. Affirmed.

Appeal from decree granting supplemental review of executors' account.

The facts appear in the following opinion by Work, P. J., granting petition for review:

William Sloan died June 7, 1912, leaving a widow, Jessie Sloan, but no children nor the descendants of such living. He left a will dated April 14, 1912, by which he disposed of his entire estate and appointed his wife and John Risdon, executrix and executor. Both qualified and letters testamentary were granted to them.

For the history of the settlement of this estate, see opinion and order filed on June 21, 1915, at No. 18 March Court, 1914, from which an appeal was taken to the Supreme Court and an opinion reported in Sloan's Est., 254 Pa. 346.

This is the second petition for review of the account of the executors of William Sloan, deceased. The facts in this case are so similar to the facts in the case reported in Sloan's Est., 254 Pa. 346, wherein the court decided in

favor of the petitioner, that we deem it unprofitable to repeat them here, showing the right of the petitioner to a further review of this account.

The testimony and the records in this case show the facts to be substantially as follows:

William Sloan died June 7, 1912, and by his will he gave his wife, Jessie Sloan, the life use of his residuary estate. The said Jessie Sloan died testate February 20, 1915. At William Sloan's death he was and for some time prior thereto had been the owner of seventy-two (72) shares of the capital stock of the Westinghouse Air Brake Company, a corporation, of the par value of fifty ($50) dollars per share.

On April 24, 1912, the board of directors of the Westinghouse Air Brake Company adopted the following resolution:

"Resolved, That a dividend of 33 1/3 per centum, payable in the capital stock of the company at par on July 10th, 1912, be and the same is hereby declared to the holders of the shares of the capital stock of this company as shown on the books on June 29th, 1912; the shares of stock constituting said stock dividend to be paid for out of the surplus of the company; and be it

"Resolved, That the proper officers of this company be and they are hereby authorized and directed to execute and deliver to the holders of the capital stock of this company proper certificates for the shares constituting said stock dividend pursuant to this resolution and for any fractional parts or shares to execute and deliver scrip certificates, convertible into stock at par in amounts aggregating fifty dollars ($50) or multiples thereof, but until converted into stock such scrip certificates shall confer no right to vote or to receive dividends; and be it further

"Resolved, That the transfer books of the company be closed from June 29th, 1912, to July 10th, 1912, both inclusive, and that no transfers be made on or between said dates."

On March 12, 1913, the board of directors declared a further dividend of five per cent., which on the ninety-six (96) shares amounted to 4.8 shares.

As to the first or 33 1/3 per cent. dividend.

The dividend on seventy-two (72) shares of stock standing in the name and belonging to the said William Sloan amounted to twenty-four (24) shares and certificates therefor having been issued in his name, the company having no notice of his death, were included in the inventory and the account filed by his executors at an appraised value of $137 per share or a total for the ninety-six shares of $13,152.

The executor of the said Jessie Sloan now claims that her estate is entitled as life-tenant under the will of said William Sloan to these twenty-four (24) shares of stock, absolutely.

It appears from the evidence that the fiscal year of this corporation ends on July 31st, of each year, at which time the value of the assets of the company and the amount of its surplus earnings are ascertained officially and this statement of the condition of the corporation is approved by the board of directors and sent to the stockholders. At the close of business July 31, 1911, the surplus account showed a balance of $7,907,558. On April 24, 1912, when the 33 1/3 per cent. dividend was declared the surplus of the company for the fiscal year ending July 31, 1911, remained intact and unimpaired. The amount required for this stock dividend was $4,583,333, which left an excess of $3,324,225.

It may be here remarked that there is in this case no evidence of the market value of the shares of stock and no evidence of the intrinsic value thereof other than as shown by the books of the company. The valuation placed by the company on its assets by its inventories for the purpose of this case must be accepted as correct and the value of the stock and the rights of the parties determined as based on the value of the stock as shown by the books.

The company's inventory value of the assets was on July 31, 1911, $23,458,278; on July 31, 1912, $27,126,187, and on July 31, 1913, $30,225,173.

The records of the company show that the net earnings after all the expenses of operation and allowances made for depreciation was on July 31, 1911, $2,872,563; on July 31, 1912, $3,851,703, and on July 13, 1913, $5,-255,259. The records of the company also showed that the number of shares of stock outstanding on July 31, 1911, was 280,000; on July 31, 1912, 366,465 2/3, and on July 31, 1913, 392,519 2/3.

The surplus account of the company taken from the records from July 31, 1911, to and including July 31, 1914, is as follows:

| | |
|---|---:|
| July 31, 1911, Balance to credit of surplus account, ................ | $7,907,558 |
| July 31, 1912, Amount credited to surplus account, ................. | 1,082,196 |
| Total, ............... | 8,989,754 |
| July 31, 1912, Amount charged for 33 1/3 per cent. stock div., .......... | 4,583,333 |
| July 31, 1912, Balance to credit of surplus account, ................ | 4,406,421 |
| July 31, 1913, Amount credited to surplus account, ................. | 2,269,337 |
| Total, ............... | 6,675,758 |
| July 31, 1913, Amt. charged for 5% stock div... $922,700 | |
| July 31, 1913, Less stock issued to Pension Board, ....... 250,000 | |
| | 1,172,700 |
| Total surplus account, .. | 5,503,058 |

July 31, 1914, Less sundry adjustments ap-
plying on previous years, .  197,303

July 31, 1914, Balance of surplus account, .  $5,648,865

The entire value of the stock with all its incidents at the death of the testator June 7, 1912, constituted the corpus of the estate. Whatever value beyond par the stock then had by reason of the large surplus fund of the company attached to the stock and formed a part of the principal of the estate.

At the date of the testator's death the capital of the Westinghouse Air Brake Company was $14,000,000 with a surplus of $7,907,558. On July 31, 1911, before the dividend of 33 1/3 per cent. was declared the capital and fixed surplus amounted to $21,907,558. The sum distributed in dividend was $4,583,333. Deducting this amount from the total surplus leaves a balance of $3,-324,225 which is $4,583,333 less than the amount of the surplus which formed part of the corpus of the estate at the date of testator's death. In order, therefore, to preserve the corpus of the estate unimpaired the whole amount of the 33 1/3 per cent. dividend of $4,583,333 must be apportioned to the corpus, thus restoring the amount of the surplus of $7,907,558 the amount at which it stood at the death of the testator. The effect is to preserve to the corpus of the estate of William Sloan all of the surplus which had accumulated prior to his death. The rule of law in Pennsylvania seems to be well settled that

"When the stock of a corporation is bequeathed in trust for the use of a beneficiary for life with remainder over, surplus profits accumulated during the testator's life, but not divided until after his death, belong to the corpus of his estate, while dividends of earnings made after his death, whether in cash, scrip or stock, are in-

come and are payable to the life-tenant": Smith's Est., 140 Pa. 344.

Applying the above principle to the case before us we conclude that the twenty-four (24) shares of stock representing the 33 1/3 per cent. dividend belongs to the principal of the estate of William Sloan and not to the life-tenant: Boyer's App., 224 Pa. 144; Stokes' Est. (No. 1), 240 Pa. 277.

As to the second or 5 per cent. stock dividend.

On March 12, 1913, the board of directors declared a stock dividend of five per cent., which on the ninety-six (96) shares amounted to 4.8 shares, for the 8/10 of a share the company issued a scrip and the executor, John Risdon, soon afterwards sold this scrip for $106.15, and turned the money over to the life-tenant. The four shares were issued to the William Sloan estate and retained by the executor, John Risdon. As between the testator and the life-tenant, under his will the life-tenant was entitled to the use of the ninety-six (96) shares of stock when this dividend of five per cent. was declared, provided the rights of the remaindermen were not infringed upon.

On July 31, 1912, the company credited to surplus account $1,082,196. On July 31, 1913, some four months after the dividend was declared the company credited to surplus accounts $2,269,377. The amount required to pay the dividend was $922,700. It is, therefore, apparent that the payment of this dividend did not impair or infringe upon the principal or corpus of the estate at the date of the testator's death. The payment of this dividend left the principal of the trust estate unimpaired. This being true, it follows that the five per cent. stock dividend declared on March 12, 1913, represented earnings made after the date of the death of the testator and are income and are payable to the life-tenant: Boyer's App., 224 Pa. 144; Stokes' Est. (No. 1), 240 Pa. 277.

The court made the following order:

Now, January 26, 1917, this matter came on to be heard on petition, answer, replication, testimony and arguments of counsel, and now, February 19, 1917, upon and after due consideration and for the reasons set forth in the opinion herewith filed, the court grants the petition for review and decrees as follows: (a) That the twenty-four (24) shares of stock in the Westinghouse Air Brake Company representing the 33 1/3 per cent. dividend declared on April 24, 1912, belong to the corpus of the estate of William Sloan, deceased, and not to the life-tenant, and (b) that the four (4) shares of stock in the same company being the five per cent. dividend declared on March 12, 1913, represent earnings of the company made after the date of the testator's death and are payable to the life-tenant. Each estate to pay one-half the record costs and its own witnesses.

Exceptions were filed to the findings and the decree of the court, which were subsequently dismissed. Clarence S. Gilmore, executor of the estate of Jessie Sloan, deceased, appealed.

*Error assigned* was in dismissing the exceptions.

*Henry A. Jones,* with him *E. D. Brown,* for appellant.

*E. C. Higbee,* of *Sterling, Higbee & Matthews,* with him *C. W. Rush,* for appellees.

PER CURIAM, May 22, 1917:

Smith's Est., 140 Pa. 344, and Stokes' Est. (No. 1), 240 Pa. 277, are conclusive of the correctness of the decree of the court below, and it is accordingly affirmed, at appellant's costs.