Opinion of Court below—Opinion of the Court.  [263 Pa.

of the assignors of the mortgage (including the plaintiff) for the purpose of receiving payment of the consideration, and there was no negligence on the part of the trust company in giving him in exchange for the mortgage and the assignment a draft for the money.

3. Even though Myers did subsequently embezzle plaintiff's share of the money, the plaintiff's acts, as stated in the findings of fact, made it possible for Myers to commit the wrong and the loss must fall upon the plaintiff.

4. Under the facts found, the plaintiff is not entitled to the relief for which he has prayed, and the bill should be dismissed at his costs.

Let a decree be drawn and submitted in accordance with the findings of fact and conclusions of law, unless exceptions hereto be filed within the time prescribed by the rules in equity.

*Error assigned* was decree dismissing the bill.

*Clyde W. Hufford* and *Samuel Amspoker,* for appellant.

*Winfield McIlvaine* and *Norman E. Clark,* for appellee.

PER CURIAM, January 4, 1919:

The decree dismissing plaintiff's bill is affirmed on the opinion of Judge SWEARINGEN.

---

## McKeown's Estate.

*Trusts and trustees—Principal and income—Corporate dividends —Extraordinary dividends—Sale of stock—Distribution—Wills.*

1. In the distribution of the income of a trust estate, an ordinary corporate dividend is usually payable in its entirety to the party entitled to the income at the time the dividend was declared.

2. In the distribution of the income of a trust estate, an extraordinary corporate dividend is presumptively payable to the party entitled to the income at the time the dividend was declared; but this presumption must yield to proof of the fact, and if it appears that by said dividend the corporate assets are reduced below their value at the time the trust began, the principal must first be made good before anything is awarded to income.

3. If stock is sold which belongs to the principal of a trust estate, ordinarily all the proceeds belong to the principal.

4. If a trust estate holds stock of a corporation which is liquidated, those entitled to the income of the trust are to be awarded so much of the sums received for the stock as they show was income accruing after their right thereto began, and the balance goes to principal; and this rule is not altered though a sale of the stock is the method pursued in such liquidation.

Argued Oct. 11, 1918.  Appeal, No. 157, Oct. T., 1918, by Scott A. McKeown, from decree of O. C. Washington Co., Aug. T., 1917, No. 92, dismissing exceptions to auditor's report in Estate of Sara McKeown, deceased.  Before STEWART, MOSCHZISKER, FRAZER, SIMPSON and FOX, JJ.  Decree modified and affirmed.

Exceptions to report of J. Boyd Crumrine, Esq., Auditor.

The opinion of the Supreme Court states the case.

*Errors assigned* were in dismissing exceptions to auditor's report.

*Arthur E. Young,* with him *H. B. Hughes,* for appellant.—The gains or profits on the sales totalling $121,-545, in view of the terms of the will and in justice to the life beneficiaries, should be distributed as income in order to carry out the plain intent of the testatrix, and cannot be added to the corpus of the trust estate except in violation of the rule against accumulations: Park's Est., 173 Pa. 190; Quay's Est., 253 Pa. 80.

The gain or profit of $2.96 a share, or of $11,840, which represents surplus and undivided profits earned since the creation of the trust estate, which came into

the hands of the trustee upon the sale of the 4,000 shares
of pure oil stock made in liquidation of the entire assets
of that company, is income, distributable to the life
beneficiaries as other income in accordance with the
terms of the will: Earp's App., 28 Pa. 368; Smith's
Est., 140 Pa. 344; Stokes's Est., 240 Pa. 277; Sloan's
Est., 258 Pa. 368; Matter of Rogers, 22 N. Y. App. Div.
428.

The gain or profit of $78,000 on the sale of the 4,000
shares of pure oil stock results, in effect, from a liqui-
dation of that company and is distributable as other in-
come to the life beneficiaries.

The distribution as made of the $121,545 to the corpus
of the trust estate violates the rule against accumula-
tions: Mitcheson's Est., 15 Philadelphia 523; 11 W. N.
C. 547; Rhodes' Est., 147 Pa. 227; Martin's Est., 185
Pa. 51; Edwards' Est., 190 Pa. 177; Grim's App., 109
Pa. 391.

*Norman E. Clark,* with him *Isaac W. Baum* and *Win-
field McIlvaine,* for appellees, cited: Graham's Est., 198
Pa. 216; Kemble's Est., 201 Pa. 523.

OPINION BY MR. JUSTICE SIMPSON, January 4, 1919:

By the will of Sara McKeown, her residuary estate is
given to her trustee with directions to appraise it within
one year, "his valuation for the purposes of this will
and trust and the distribution thereunder" to be "final
and conclusive." Testatrix then gave one-fourth thereof,
at that valuation, to her daughter Anna Braden, should
she survive testatrix, which she did; and as to the other
three-fourths directed it to be held by the trustee, upon
an active trust, "to pay annually one-third of the net in-
come from the said remaining three-fourths to each of
my sons, William King McKeown, James B. McKeown
and Scott A. McKeown, during their natural lives,"
with certain remainders over, not necessary to be con-
sidered at this time. She further provided that "when-

ever there shall be any loss, or depreciation or increase in value of any of the said trust estate, such loss, depreciation or increase shall be divided equally between the several distributive shares, then remaining unpaid; and whenever by the terms hereof, it shall be the duty of my trustee to pay any distributive share hereunder, and it becomes necessary to value and appraise the trust estate in order to arrive at the value of such share, such valuation and appraisement shall be made by my trustee, and as made by him shall be final and conclusive for the purposes of this trust and such distribution."

The trustee appraised the estate, in accordance with the first of the foregoing directions in regard thereto, gave Anna Braden her one-fourth thereof, and set apart the other three-fourths for the purposes of the continuing trust above provided for. William King McKeown, one of the sons, having died, an account was filed, and Anna Braden, the daughter of testatrix, claimed that the will violated the rule against perpetuities, and also provided for an illegal accumulation. The court below decided against her, and this court affirmed: McKeown's Est., 259 Pa. 216.

When the present account was filed, it was referred to an auditor, to make distribution of the balance in the hands of accountant, and to report to the court. Scott A. McKeown, one of the sons and the appellant here, proved before the auditor that certain of the funds appearing in the account were the proceeds of sales of stocks and bonds which had belonged to testatrix; that their sale had realized more than the appraisement made when the one-fourth was given to Anna Braden; and claimed that he and his brothers were entitled to that excess, under the provisions of the will above quoted. Both the auditor and court below found against him, holding that all that excess belonged to the corpus of the trust estate, and from the decree excluding him from participation therein he prosecutes the present appeal.

Among the assets were national bank, electric light and gas company stocks and gas company bonds, each of which were sold for prices in excess of the appraisement. The basis of appellant's claim to receive one-third of that excess, is because that appraisement was made "final and conclusive for the purpose of this will and trust and the distribution thereunder." Being a sale of assets in the corpus of the trust, presumptively all the proceeds are principal; and as no evidence was produced to overcome that presumption, we affirm the decision of the court below that they belong to principal and not to income. The appraisement referred to was made for the purpose of determining how much of the entire estate was to be paid to Anna Braden, and lost all its force when that distribution was made. This is evident from the fact that all later distributions were to be preceded by another appraisement, each of which was in turn to be "final and conclusive." Moreover, the appraisement could have no effect in determining what the "net income" was, and to that only the sons were entitled.

Testatrix also left 7,316 shares of the common stock of the Pure Oil Company, one-fourth of which, or 1,829 shares, were turned over to Anna Braden, and the balance, 5,487 shares, were held in the trust. There were also 52 shares of the Pure Oil Producing Company, 13 of which were turned over to Anna Braden, and the balance exchanged for 273 shares of the common stock of the Pure Oil Company, making the trust's total holdings of said stock 5,760 shares. On April 22, 1913, the trustee sold 1,760 of those shares for $14.87½ per share, an aggregate of $26,180, and an advance of $17,380 over the appraisement; and on July 27, 1917, sold the other 4,000 shares for $24.50 per share, an aggregate of $98,000, and an advance of $78,000 over the appraisement.

This latter sale, the auditor finds, as a fact, was made, in conjunction with all the other outstanding shares of stock, to the Ohio Cities Gas Company, which thereby

obtained all the assets of the Pure Oil Company, including the accumulated and undistributed income, and "amounted to a virtual liquidation of the Pure Oil Company, which was formally dissolved on February 23, 1918."

The testimony also showed, and the auditor found as a fact, that at the time of testatrix' death the book value of the common stock was $12.22 per share; its book value when the 1,760 shares were sold was $12.29 per share; and its book value at the time of the final sale and liquidation of the Pure Oil Company was $15.18 per share.

All of the above findings were founded upon the uncontradicted testimony of the treasurer of the Pure Oil Company, who also testified, without contradiction, that in every instance the figures had been arrived at after charging off the depreciation of the properties, and in no instance had anything been added for appreciation thereof. It is clear, therefore, that the assets of the company, at the time of the sale of the 1,760 shares, had increased, after testatrix' death, to the extent of seven cents per share, owing to an accumulation of income; and that at the time of the sale of the other 4,000 shares, and the liquidation of the company, the assets had increased, after testatrix' death, to the extent of $2.96 per share, owing to an accumulation of income. It is also clear that the difference between the book value of $15.18 per share, at the time of the final sale and liquidation of the company, and the $24.50 per share, realized at that time, is not income. For this latter reason the claim of appellant that that difference should be considered as income, and divided among the sons, must be overruled, and the decision of the court below in regard thereto must be affirmed.

The court below, however, went further than that. It held that the sons were not entitled to the accumulated income actually included in the sales, because the money received arose from a sale of stock which formed part of

the corpus, and was not a dividend declared on the stock; and also because of the difficulty which life tenants would ordinarily have in proving how much of the price realized in fact represented income. As to the latter reason it is sufficient to say that the difficulty of proving a fact has never been held to deprive one of a right, growing out of such fact, if and when proved; and as to the former it is sufficient to say that in a court of equity, as the Orphans' Court is within the sphere of its jurisdiction, substance is never sacrificed to form. Had the Pure Oil Company declared a dividend of $2.96 per share, and then sold its assets to the purchaser for a price equivalent to $21.54 per share, exactly the same result would have been reached, and no one would have questioned the right of the sons to have the $2.96 per share distributed among them. That for the convenience of itself and of the purchaser, the transaction took the simpler form of a sale for $24.50 per share, cannot affect the material fact that of that price $2.96 represented income accumulated after the creation of the trust. It is true that, as between corporation and stockholder, the latter gets nothing until dividend declared, either voluntarily, or in rare instances when the courts, under their equitable powers, compel the declaration: McLean v. Pittsburgh Plate Glass Co., 159 Pa. 112. But that is a matter solely between the corporation and the stockholder, and does not necessarily determine the rights of a life tenant and remainderman in an estate owning such stock. If the company declares a dividend, whether of stock or cash, partially out of earnings and partially out of principal, a court of equity, made cognizant of the fact, will apportion the dividend between the life tenant and the remainderman, in such a way as to maintain intact the principal of the estate, only giving the balance to the life tenant. So also, if a corporation sells its capital and accumulated income for a gross sum, a court of equity should distribute that sum according to like equitable principles.

What has been said above determines that the $2.96 per share belongs to the life tenants, unless the above-quoted provisions of the will that "any loss or depreciation or increase in value of the said trust estate...... shall be divided equally between the several distributive shares" compels a different conclusion under this will. It is clear, however, that that provision has no relation to the question now under consideration, but is intended only to preserve equality between the several distributive shares, after it has been found that such loss, depreciation or increase has accrued as to any of the shares.

Whether or not the seven cents increase per share in the book value of the stock, at the time the 1,760 shares were sold, ought to be applied to principal or income, raises a different question. Usually income is not apportionable, and for that reason if an ordinary dividend is declared after the death of a testator, the whole of that dividend is income. One of the reasons for so holding is that it would be impracticable to determine what part of that dividend was earned during the time the testator was alive, and what part of it after he was dead. Profits are not earned de die in diem. The income of to-day may be the result of the labor of a year ago and the labor of to-day may not find its way into income on hand until a year hence. For the same reason if an ordinary dividend is declared after a life estate ceases, it belongs to the remainderman. It is obvious, too, that a life tenant who gets the benefit of the dividend which partially accrued during a testator's life, and which in strict equity would partially belong to principal were it practicable to apportion the payment when made, ought not also to get a dividend not declared when the stock was sold, even though the fact that the dividend period was approaching had enhanced the price realized by the sale. It is for this reason that the law, recognizing the fact that those matters balance themselves in the long run, in ordinary cases adopts the act of the corporation in declaring the dividend as the only practical test in such

distributions. This rule, however, applies only to the case of ordinary dividends, and not to extraordinary dividends, or the winding up and dissolution of the corporation, when the actual facts are susceptible of proof. In those cases the rules of strict equity are applied, and the apportionment is made according to the facts shown. It follows from the foregoing that the seven cents per share on the 1,760 shares was properly awarded to principal.

In Earp's App., 28 Pa. 368, we stated the underlying principle to be applied in this class of cases; and perhaps our latest case on the subject is Sloan's Est., 258 Pa. 368. It is said by the auditor that the intermediate cases have not always been consistent with the two cases cited, or with each other. Inasmuch, however, as the differences are only in the application of the rule, we are far less concerned in knowing where and why they exist, than we are in deciding this case correctly and in pointing out a way, which, being the right way, will in course of time become the antiqua via along which the law delights to travel.

To epitomize:

(1) An ordinary corporate dividend is usually payable in its entirety to the party entitled to the income at the time the dividend was declared.

(2) An extraordinary corporate dividend is presumptively payable to the party entitled to the income at the time the dividend was declared; but this presumption must yield to proof of the fact, and if it appears that by such dividend the corporate assets are reduced below their value at the time the trust began, the principal must be made good before anything is awarded to income.

(3) If stock is sold which belongs to the principal, ordinarily all the proceeds thereof also belong to the principal.

(4) When a corporation is liquidated, those entitled to the income of the trust are to be awarded so much of the sums received for the stock as they show was income accruing after their right to income began, and the bax

ance goes to principal; and this is so although the course pursued takes the form of a sale of the stock.

The decree of the court below is modified so far as relates to the sum of $11,840, being the sum of $2.96 per share on the 4,000 shares of stock, and that sum is directed to be distributed as income. As thus modified the decree below is affirmed; the costs of this appeal to be paid by the estate.