## Waterman's Estate.

*Wills—Construction—Trusts—Gifts in specie—Issues and profits of corporate stock—Extraordinary or special dividends.*

1. A gift for life of "issues and profits" of testator's interest in the stock of a particular corporation is a gift in specie, and special or extraordinary dividends declared after testator's death from earnings made in his lifetime pass thereunder to the life-tenant.

2. I. G. W. died Sept. 20, 1922, holding an undivided interest in 7100 shares of the K. Coal Company, held by the F. Trust Company as trustee under the will of his grandfather, I. S. W., until the death of the last surviving grandchild. On Nov. 2, 1922, the K. Company declared a special or extraordinary dividend of $1,000,000—payable in Liberty Bonds, in which it had invested its corporate funds—out of earnings made during the lifetime of I. G. W. At his death, these earnings formed a part of the value of the stock. By his will, I. G. W. directed the trustee to collect the "issues and profits" of the fund held by it, which consisted wholly of the said 7100 shares, and pay the same monthly to his widow and daughters during their lives, with gifts over on their decease: *Held*, that the gift of "issues and profits" was a gift in specie and I. G. W.'s share of the special dividend passed thereunder to his widow and daughters and not to the trustee.

Exceptions to adjudication. O. C. Phila. Co., April T., 1883, No. 460.

The facts and relevant clauses of the will appear from the following extract from the adjudication of Judge Henderson:

"The trust in this estate arose under the will of Isaac S. Waterman, who died March 10, 1883, by the twentieth item of which he directed that his inter-

3 D. & C.

ests in the Kingston Colliery or mines, and also his interest in the Gaylord Colliery, should be held by the trustees under his will and managed by them until one year after the death of his last surviving grandchild living at the time of his death, and while so held the income should be divided as provided in reference to the income of the residuary estate.

"The trust still continues, the event upon which it is to terminate, the expiration of one year after the death of the last surviving grandchild living at the time of testator's death, not having occurred. . . .

"Isaac G. Waterman, testator's grandson, died Sept. 7, 1920, domiciled in the State of New York, leaving a will, whereby he disposed of his interest in this estate. . . .

"Our testator, Isaac S. Waterman, at the time of his death, March 10, 1883, was tenant in common with others in fee of certain properties known as the Kingston and Gaylord Mines, and, after his death, the Kingston Coal Company was incorporated and his estate received for his interest in the mines 7100 shares. Under his will, the testator created a trust of these shares, to continue until the death of his surviving grandchild. All of the shares under this trust are vested, and where any of the parties are deceased, their holdings in this trust have passed to their personal representatives. It is practically a voting trust. There is no question before me as to the construction of the will of Isaac S. Waterman, nor any contest as to the shares of the parties taking thereunder.

"Testator's grandchild, Isaac George Waterman, by his will, gave his interest in the aforesaid 7100 shares of stock of the Kingston Coal Company to the Fidelity Trust Company in trust for his wife and daughters.

"On Nov. 9, 1922, the Kingston Coal Company, out of profits earned in the lifetime of Isaac George Waterman, declared a dividend of $1,000,000, payable in Liberty Bonds, in which they had invested their funds. The estate of Isaac S. Waterman received $355,000 of this dividend.

"It appears from the petition for distribution and attached memoranda that on Sept. 1, 1920, immediately prior to the death of Isaac George Waterman, the capital stock and surplus of the Kingston Coal Company totaled $4,120,922.19, which amount included the $1,000,000 par value of Liberty Bonds. At the time of the declaration of the extraordinary dividend on Nov. 9, 1922, the capital stock and surplus of the corporation totaled $3,741,989.93, which is $378,973.26 less than they totaled at the time of Isaac George Waterman's death; surplus having been depleted from time to time by regular dividends which exceeded earnings during the same period. This total of capital and surplus, $3,741,989.93, was then further depleted by the extraordinary dividend of Liberty Bonds, the amount then standing at the total of $2,721,348.83, a depletion since the death of the decedent of $1,389,573.36.

"The interests in the 7100 shares of the Kingston Coal Company held by the estate of Isaac S. Waterman, prior to the death of Isaac George Waterman, were vested absolutely as follows:

Isaac George Waterman................4/24 or 1183 2/6 shares.
Beatrice Romaine Goddard.............5/24 or 1479 1/6 shares.
Countess de Valbranca................5/24 or 1479 1/6 shares.
Executors of Clara D. Night..........5/24 or 1479 1/6 shares.
E. Waterman Dwight...................5/24 or 1479 1/6 shares.

"These interests were owned by the respective parties as absolutely as if certificates for said shares of stock were in their respective names and had

been deposited with the trustees of the estate of Isaac S. Waterman on a voting trust, which was to continue until the death of the last to die of the grandchildren of Isaac S. Waterman living at the time of his death. In determining the question now before me, the matter is to be regarded precisely as if there were no trusts under the will of Isaac S. Waterman, and Isaac George Waterman had died possessed absolutely in his own right of 1183 2/6 shares of stock in the Kingston Coal Company. Had he been alive at the time of the declaration of this dividend, he would have received his share of it under the provisions of the grandfather's will.

"Isaac George Waterman died domiciled in New York, and it appears that his estate has been settled, and rather than remit his share of this fund to the executor at his domicile, I have been requested to make distribution under his will of his share of this dividend. In other words, if I determine that the whole of his share of the dividend belongs to the *corpus* of his estate, then it will be awarded to the Fidelity Trust Company, trustee under his will for his wife and daughters; otherwise, I will award it to his wife and daughters, the life-tenants under his will.

"It is conceded that all dividends declared out of earnings subsequent to the death of Isaac George Waterman are payable to his wife and daughters, but the question before me is complicated by the fact that this special dividend was out of earnings made during the lifetime of Isaac George Waterman, and at the time of his death these earnings formed a part of the value of the shares which he so placed in trust. . . .

"By the fourth paragraph of his will Isaac George Waterman provided:

" 'Fourth. I give and bequeath to my beloved wife, Daisy Greene Waterman, all the accumulated income due me at the time of my death from E. W. Dwight and Fidelity Trust Company as trustees for the benefit of the heirs of my late grandfather, Isaac S. Waterman.'

"He further provided:

" 'Sixth. I direct that the principal, that is, my share of the principal, of the fund held by E. W. Dwight and the Fidelity Trust Company for the benefit of the heirs of my late grandfather, Isaac S. Waterman, be divided into three equal parts, that, *if practical, the same be not converted into money or sold,* but if it be not practical, *to divide the same without selling it,* then that, so far as necessary for the purposes of such division, but only to such extent, it be sold or converted into money.

" 'Seventh. One of such equal parts I give, devise and bequeath unto the Fidelity Insurance, Trust and Safe Deposit Company of Philadelphia, Pennsylvania, in trust, nevertheless, to collect the issues and profits thereof, and to pay the same monthly to my wife, Daisy Greene Waterman, and upon her death to divide the same, share and share alike, between my children, Camilla and Margaret.

" 'Eighth. The remaining two of such parts I give, devise and bequeath to said Fidelity Insurance, Trust and Safe Deposit Company, in trust, nevertheless, to collect the issues and profits thereof, and to divide the same monthly between my daughters, Camilla and Margaret, share and share alike. This trust shall terminate upon the deaths of both my said children, and upon the termination thereof the principal and accumulated income, if any, shall be divided among their issue them surviving, *per capita* and not *per stirpes.*'

"It will be observed from the foregoing provisions of the will that the testator has given to his trustee his interest in these shares of stock in kind and directed that they shall not be converted, and he then gives in kind the issues and profits thereof to his wife and daughters.

3 D. & C.

"The Kingston Coal Company is incorporated under section 38 of the Act of April 29, 1874, P. L. 73, for the purpose of mining and preparing for market coal, iron ore and other minerals and manufacturing iron and steel. . . .

"I must now decide to whom do these dividends belong. The title to them must be found in the will. It should be observed that the will gives these shares of stock in specie to the trustees therein named, and in specie gives the issues and profits thereof to the respective life-tenants.

"It may be assumed that these dividends will work a depletion of the assets of the company as they existed at the date of the death of Isaac George Waterman. The question then arises, what did the testator intend when he gave in specie the issues and profits accruing from assets which he gave in specie to his trustee and directed should be retained? In my opinion, this question must be approached from an examination of the provisions of the will.

"In Pennsylvania, a gift of interest, income and profits, standing alone, will exclude the life-tenant from extraordinary dividends which decrease the *corpus.*

"In Boyer's Appeal, 224 Pa. 144-153, our Supreme Court, speaking through Mr. Justice Potter, said: 'The rule for the determination of controversies over dividends, between life-tenants and remaindermen, should be to give just what the donor intended each to have. As has been said, the intent of the grantor is the pole-star for the guidance of the courts.'

"Under the provisions of this will, however, the trustee is given these assets in kind and directed to retain them, and, having given the issues and profits thereof to his life-tenants in specie, I am of opinion that these dividends have been given in specie, and, hence, the life-tenants are entitled to take them.

"In my adjudication in the Estate of Elizabeth C. Roberts (2 D. & C. 667-670) I said:

" 'A similar question was discussed and decided in In re Bates, 1 Chancery, 22 (1907), although therein the securities were merely hazardous and not wasting in character. . . .

" 'In Gray v. Siggers, 15 Chancery Div. 74 (1880), there was also a clause in the will empowering trustees to retain any portion of the trust estate or to sell and invest it in their discretion. It was held that this power took the case out of the rule of Howe v. Earl of Dartmouth, 7 Vesey, 137, the court saying: 'I think he intended, if the trustees saw fit, that she should enjoy the property in specie, just as he himself was enjoying it.' See, also, In re Sheldon, 39 Chancery Div. 50 (1888); In re Thomas, 3 Chancery Div. 482 (1891); In re Wilson, 1 Chancery Div. 394 (1907).

" 'In re Nicholson, 2 Chancery Div. 111 (1909), is to the same effect, the doctrine being applied to wasting assets. See, also, In re Godfree, 2 Chancery Div. 110 (1914); In re Inman, 1 Chancery Div. 187 (1915). . . .

" 'The guardian *ad litem* replies to the foregoing authorities by citing several cases, which I will briefly consider.

" 'In re Chaytor, 1 Chancery Div. 233 (1905), there was no general gift of the income of the residue, nor any gift of income pending conversion, and the life-tenant was merely given the income from the proceeds of the conversion. It, therefore, followed that, while the trustee had power to postpone conversion and retain securities, the life-tenant was only entitled to the income of them as if converted at the testator's death.

" 'In this connection, see, also, In re Wilson, 1 Chancery Div. 394 (1907).

" 'In Pickering v. Evans, 2 Chancery Div. 309 (1921), the will contained no authority to retain the securities in which the estate was invested, there being

merely a direction to divide the estate at the termination of the trust, and it was held that this was not sufficient to take the case out of the rule in Howe v. Earl of Dartmouth.

"'In Warrack's Trustees v. Warrack, 56 Scottish L. R. 472 (1919), the trustees were directed by the will to apportion the income received from wasting assets as between income and *corpus*. That case turned upon this unusual provision of the will.'

"Counsel for the trustee further cites in support of his contention Stokes's Estate, No. 1, 240 Pa. 277. This case, however, is not in point because under the will of that testator there was no direction to retain assets in specie nor a gift of the interest and income thereof in kind.

"An examination of the leading cases dealing with the question in Pennsylvania shows that, with two exceptions, none of them contain a direction to retain investments in specie; and, in this connection, I direct attention to Earp's Appeal, 28 Pa. 368; Smith's Estate, 140 Pa. 344; Connolly's Estate, 198 Pa. 137; Sloan's Estate, 258 Pa. 368; McKeown's Estate, 263 Pa. 78.

"The two exceptions where there is found a direction to retain investments in specie are Boyer's Appeal, 224 Pa. 144, and Philadelphia Trust Co.'s Appeal, 24 W. N. C. 137, and in both of which the dividends in question had been earned since the creation of the trust.

"Counsel for the trustee contends that Roberts's Estate, 2 D. & C. 667, is not opposed to, but supports, the trustee's claim. He points out that in that case all the royalties in question were received for coal removed since the death of the testatrix. While this is true, he overlooks the fact that the dividends there involved were derived from the *corpus*, from a wasting asset, in that the coal in place constituted the *corpus* and was being depleted. In other words, in Roberts's Estate, just as under the facts in this estate, the dividend in question is derived from the *corpus*.

"I am, therefore, of the opinion that these dividends, having been given in kind to the life-tenants, belong to them, and they will be so awarded."

*H. Gordon McCouch* and *Edmund G. Hamersly*, for exceptions.

*Raymond M. Remick*, contra.

LAMORELLE, P. J., July 11, 1923.—When Isaac G. Waterman, grandson of Isaac S. Waterman, made his will Dec. 30, 1919, he knew that the one remaining asset of the estate of his grandfather, then held in trust, was the 7100 shares of The Kingston Coal Company, valued at $190,000. He knew this because these shares of stock, comprising that entire estate, were awarded to the trustees under his grandfather's will on the fifteenth accounting, adjudication thereon being had on or about Nov. 27, 1918. He knew it because he was in the receipt of two-twelfths of the income from this asset.

The trust, so far as this stock is concerned, is found in the twentieth item of the will of Isaac S. Waterman, wherein he directs that his interest in The Kingston Colliery or mines shall be held by the trustees under his will and managed by them until one year after the death of his last surviving grandchild living at the time of his death. This trust continues because there are to-day living grandchildren within the meaning of the will.

Therefore, when, in and by the sixth paragraph of his will, Isaac G. Waterman directed that the principal; that is to say, his share of the principal of the fund held by E. W. Dwight and Fidelity Trust Company for the benefit of the heirs of his late grandfather, Isaac S. Waterman, be divided into three equal parts, he necessarily referred to his interest in these 7100 shares of stock (a corporation having been formed which took over the Kingston

3 D. & C.

mines), and to nothing else. It would seem to follow that when he directed that the trustee named by him should collect the issues and profits thereof, and pay the same monthly to his wife, Daisy Green Waterman, he realized that issues and profits from a mine or from the shares of stock, where trustees, in the exercise of their discretion, had incorporated the business, referred to all issues and all profits, no matter what they should represent. He never used the word "income." His was a gift in specie, and, being a gift in specie, the issues and profits covered every and any return from the stock.

A majority of the court are of opinion that the auditing judge was correct in his rulings, and as he has so thoroughly considered the question under discussion, it is deemed inadvisable to do more than emphasize the facts above recited.

All exceptions are accordingly dismissed and the adjudication is confirmed absolutely.

GUMMEY, J., dissenting.—The question before the court arises under the will of the testator's grandson, Isaac G. Waterman, who died Sept. 7, 1920, and who, at the time of his death, had a vested interest in two-sixteenths of 7100 shares of the Kingston Coal Company, which form the *corpus* of the trust here accounted for; in accordance with the provisions of the will of the grandfather, Isaac S. Waterman, the trust will not terminate until one year after the death of his last surviving grandchild who shall have been living at the time of his death. (See the twentieth paragraph of the will, which, so far as it relates to the share of Isaac G. Waterman, must be read in conjunction with the fifth and sixth paragraphs of the will. Reference may also be made to the adjudication filed Feb. 16, 1922, at the audit of the trustee's sixteenth account.)

On Nov. 9, 1922, that is, after the death of Isaac G. Waterman, the Kingston Coal Company declared an extraordinary dividend of $1,000,000 out of profits earned by the company during the lifetime of Isaac G. Waterman, the dividend being payable in Liberty Bonds in which the company had previously invested a part of its surplus, the dividend thus passing to the trustees by virtue of their holdings of the company's stock, amounting to $355,000 of Liberty Bonds at par. The share of this dividend held for the benefit of the estate of Isaac G. Waterman, deceased, amounts to $57,376.20, and as he left a will in which he created estates for life with directions to pay the "issues and profits" to certain life-tenants, it became necessary for the auditing judge to determine whether this sum should be distributed as principal or income.

The finding of the auditing judge was to the effect that the declaration of the extraordinary dividend depleted the corporation's surplus to the extent of the dividend, and that this depletion was necessarily reflected in the value of the stock; and while recognizing the general rule that under such circumstances the dividends should be awarded as principal (see Sloan's Estate, 258 Pa. 368; McKeown's Estate, 263 Pa. 78), the auditing judge took the view that Waterman's will showed an intention to bequeath the stock in kind to the trustees, and the issues and profits thereof in kind to the life-tenants, and that, therefore, the case was ruled by Roberts's Estate, 2 D. & C. 667, in which we held that corporate dividends declared out of royalties received for mining coal from mines which were open and in operation at the time of the testator's death belonged to the life-tenant.

I am of the opinion, however, that the facts in Roberts's Estate differentiate it from the case at bar. In Roberts's Estate the dividends there discussed were not declared as extraordinary dividends, but, on the contrary, as

to the particular corporation declaring them, were the usual and ordinary ones; they represented royalties from mines being worked to exhaustion, and were similar to dividends which, for fifty years before she made her will, testatrix had been in the habit of receiving herself, so that when she directed her trustees to pay to her nephews and nieces "the interest, income and profits" of her residuary estate, coupled with a direction to her trustees to retain investments, we believed it to have been her intention that her nephews and nieces, as life-tenants, should receive all dividends of the same character as those which she had been in the habit of receiving during her lifetime; but in the case now under discussion, the dividends which Isaac G. Waterman had been in the habit of receiving during his lifetime were ordinary dividends in the usual acceptation of that term, declared out of earnings, and did not impair the capital or surplus of the corporation, and to hold that because he directed "that if practical the same (*i. e.*, the stock held as principal) be not converted into money or sold," and gave the "issues and profits" to the life-tenants, he thereby anticipated and intended to give to the life-tenants an extraordinary dividend which materially lessens the value of the estate in remainder, would, in my opinion, give these expressions a more comprehensive scope than the testator intended. "Issues and profits" ordinarily relate to earnings, and are interchangeable terms with "income," although, of course, these terms are not necessarily coextensive or identical (In re Stevens, 95 N. Y. Supp. 297, 305; Boyer's Appeal, 224 Pa. 144, 153); the general rule that "profits" should not be distributed as income to the extent of impairing capital was distinctly recognized in Boyer's Appeal, 224 Pa. 144 (explained in Stokes's Estate, 240 Pa. 277, 282), where it is said, at page 153: "It is to be presumed that the settlor meant to indicate by the use of those three words, 'dividends,' 'income' and 'profits,' pretty much everything in the way of advantage or benefit which might accrue from the stock without decreasing the original value of the capital which it represented."

I would, therefore, distribute the dividend represented by the sum of $57,376.20 to the trustee under the will of Isaac G. Waterman, deceased, as principal.

Gest, J., concurs in this dissent.