# Wiltbank's Appeal.

1. A testatrix gave her estate in trust to pay her daughter $1400 annually from the income, and the remainder of the income to her son.   Part of the trust fund was stock in two corporations.   One ordered an increase of stock, to be distributed to the old stockholders on payment of $75 per share ; the trustee sold the privilege to subscribe.   The other corporation made a similar order, the trustee advanced money, subscribed for the stock, sold it at an advance and carried what was received in both cases to the trust account. *Held*, that these items were income and not capital.
2. The right to subscription belonged to the trust estate.

3. The price obtained by the trustee was equivalent to a premium on a sale of the stock.

4. Earnings or profits of stock of a decedent made after his death are income, though in the *form* of capital, by the issue of new stock.

5. Earp's Appeal, 4 Casey 368, compared and approved.

February 16th 1870.   Before READ, AGNEW, SHARSWOOD and WIILIAMS, JJ.   THOMPSON, C. J., at Nisi Prius.

Appeal from the decree of the Court of Common Pleas of *Philadelphia:* In Equity : No. 16, to January Term 1870.

The bill in this case was by William B. Wiltbank against The Pennsylvania Company for Insurance on Lives, &c.   It set forth that the plaintiff was the only son of Maria Carleton, who died March 2d 1865, owning, amongst other estate, 300 shares of the stock of the New Haven Gas Light Co., of the par value of $25 per share ; and of 20 shares of the stock of the New York and New Haven Railroad Co., of the par value of $100 per share; leaving surviving her the plaintiff and an only daughter, Julia V. Wiltbank, and having made her will, whereby she gave in manner following : "All the rest, &c., I give and bequeath to the Pennsylvania Company for Insurance on Lives, &c., upon the following trusts : First, to collect and receive the income, &c., of the whole estate held by the said trustee, and to pay over in quarterly instalments to my daughter, Julia V. Wiltbank, the sum of $1400 per annum for life, &c.   Secondly, and upon this further trust after payment of said income to my daughter Julia, and after payment of all taxes expenses of said trust estate, to pay the remainder of the income of said trust estate to my son William B. Wiltbank for the term of his natural life, &c. : that the defendant accepted the trust ; that the New York and New Haven Railroad Co., on the 22d of January 1866, authorized an increase of their capital to $5,000,000, and allotted "to each stockholder 40 per cent. in stock, in addition to the amount standing in his name on the books of this company on January 27th instant, by the payment to the company of $75 on each share so allotted ;" that the defendants as trustees aforesaid, under this authority became entitled to subscribe for 8 shares of this stock for $75 per share, and that they sold the privilege of thus subscribing for $157.50 and charged themselves in their trust account of Mrs. Carleton's estate with that sum; that the New Haven Gas Light Co., on the 1st of January 1867, increased their capital by an addition of 2000 shares at $25 each and ordered the directors on the payment of $25 for each share of stock "to distribute said new stock to and among the old stockholders ; so as to give one share of new stock for every five shares of old stock held by such stockholder on the 25th day of March 1867 ;" that the defendants as trustees aforesaid advanced $1500 and took 60 shares of the stock, the amount to which they were entitled,

14 P. F. SMITH—17

and afterwards sold the same, realizing a profit of $412.30, with which they charged themselves in their account of Mrs. Carleton's trust estate; that on the 19th of November 1868 the same company authorized another addition of 4000 shares, at $25 per share to their capital stock, and instructed the directors on the payment of $25 per share "to distribute the same to and among the old stockholders, so as to give one share of new stock for every three shares of old stock held by such stockholders on the 26th day of December 1868;" that the defendants as trustees of Mrs. Carleton's estate advanced $2500 and took 100 shares of stock, the number to which they were entitled as such trustees, and afterwards sold it at a profit of $574.44 with which they charged themselves in their trust account; that the income of the trust estate, independently of the sums so received as profit on said stocks has been and is more than sufficient to pay Julia V. Wiltbank the sum of $1400 per annum.

The prayer of the bill was that the plaintiff be declared to be entitled to receive from the defendants the above-mentioned sums derived from the sales of the stocks as income of the said trust estate.

The defendants, by their answer, admitted the foregoing allegations, but declined to pay the sums claimed, because they were advised and believed these sums were capital and not income.

The court below (Ludlow, J.) decreed that these sums were capital and not income, and dismissed the bill.

The plaintiff appealed to the Supreme Court, and assigned this decree for error.

*W. W. Wiltbank*, for appellant.—The stock of the New York and New Haven Railroad was an adventitious profit arising from the sale of a mere right. There was no dividend of stock or of the capital fund. The new stock was not issued gratuitously; it was not part of the capital, and therefore was income: Earp's Appeal, 4 Casey 373. The trust is to be guarded as much for those in remainder as for those who have the immediate benefit: Hill on Trustees 384; Paris v. Paris, 10 Vesey 185; Clayton v. Gresham, Id. 288; Wills v. Steere, 13 Id. 363; Bardey v. Wainwright, 14 Id. 66; Hooper v. Rossiter, 13 Price 774; Price v. Anderson, 15 Simons 473; Plumb v. Neild, 6 Jurist N. S. 529; McClaren v. Stanton, 3 De Gex, F. & J. 202.

*W. F. Judson*, for appellees, cited Hartley v. Allen, 4 Jurist N. S. 500.

The opinion of the court was delivered, February 28th 1870, by AGNEW, J.—Mrs. Maria Carleton, by her last will, created a trust of her estate, making the defendants trustees, and directing

that they should pay to her daughter Julia the sum of $1400 per annum, out of the income and profits, and to her son, the plaintiff, the remainder of the income. After the death of Mrs. Carleton, two corporations in which she owned stock, constituting a part of the trust estate, resolved to increase their capital by an issue of new stock to be subscribed and paid for by the stockholders. The defendants, as trustees, sold the right to subscribe for stock in one company, and subscribed and paid with their own money for stock in the other company. They sold the stock subscribed for at a premium, and credited the trust fund with the sums made in both cases. The question is, whether the profits made by the trustees belong to the capital or to the income of the trust. The court below thought it was capital. We think this was an error.

The new stock issued by the New York and New Haven Railroad Company, and by the New Haven Gas Light Company, was not a part of the capital of the old stock, but a mere product of an advantage belonging to it, to wit, a right to subscribe for the new stock. The new stock is added capital represented by the cash which paid for it. This cash belonged to the parties who paid it, and formed no part of the trust estate. Had the companies sold the new stock in the market instead of permitting it to be subscribed for by the stockholders, it is obvious, the new stock would have had no connection with the owners of old stock. The premium of the sales of the new stock would have gone directly into the treasury of the corporations, and would have found its way into the pockets of the stockholders only by means of future dividends. The dividends thus declared, manifestly would have been no part of the capital of the trust estate, but would be a profit earned by the corporation after the death of Mrs. Carleton, and paid to the trustee as income.

Had the defendants purchased at a sale and paid their own money, it is evident that they would have been entitled to any profit they might have made for themselves. The liability to account for the profit is founded on the fact that the right of subscription belonged to the trust estate. The defendants had no personal right to subscribe for the new stock, but could subscribe only *qua* trustee. In so far as this brought an advantage, it accrued, therefore, to the trust, and not to themselves. But this advantage is manifestly a profit, as it consists only of the excess made by the trustee's sale of the stock for a premium over and above the capital paid in by the trustee at par. This capital belonged to the trustee, the residue only, less expenses, was profit, and belonged to the trust. The sale of the *right* of subscription, (instead of making an actual subscription and selling the stock), stands precisely on the same footing. The price obtained for it is the profit, and is the equivalent of the premium on the sale of the stock itself.

[Wiltbank's Abpeal.]

The new stock was neither a stock dividend nor a dividend of a surplus fund. It was not paid for out of either capital or income, but with the money of the trustee or subscriber. It in no sense represents either income or capital of the old stock. The price brought by the sale of the subscription right, and the premium of the subscribed stock, are, therefore, an incidental, and in one sense an accidental profit, following the ownership of the old stock, as the product of an advantage belonging to it.

The case is not within the decision in Earp's Appeal, 4 Casey 368, though falling clearly within its principle. There the actual earnings of Robert Earp's stock made before his death, were held to constitute a part of his capital at his decease, while the earnings made afterwards were income only. The principle established in that case is, that the earnings or profits of stock made after death are income and not capital, even though in *form* of capital by the issue of new stock. Equity, seeking the substance of things, found that the new stock was but a product, and was, therefore, income. Precisely so it is here, equity discovers the subject of controversy is a mere product; a right incidental to the stock, and is therefore income.

The effect of the issue of the new stock upon the market value of the old, does not alter the principle of the case, however it may possibly influence the administration of the equity in ascertaining the actual profit realized from the advantage of subscription belonging to the old stock. There has been no serious diminution in the value of the old stock caused by the new issue, and therefore, this possible question is not before us. In a case of what is termed the "*watering*" of stock merely—an increase of the nominal capital, without any addition, or only a partial addition to the actual capital—there might be a difference possibly, though we do not assert it now. Here the trustee has credited the trust with the profits made, and the only question is, whether it is income or capital. We are of opinion it is income, and to be distributed as such under the will of Mrs. Carleton. The decree of the Court of Common Pleas is reversed, and a decree ordered to be entered in favor of the appellant with costs, the decree to be drawn up and submitted according to rule.