## Nirdlinger's Estate.

*Trusts and trustees—Life tenants — Remaindermen — Corporations — Apportionment of dividends and profits from corporate stock between life tenants and remaindermen.*

1. Where a testator bequeaths stocks of corporations and other property to a trustee to pay "rents, issues, income, dividends and revenue" to persons designated for life, and after their death to remaindermen, an ordinary dividend on the corporate stocks belongs to the life tenants.

2. An extraordinary dividend paid out of accumulated earnings, presumptively belongs to the life tenant, but, if shown that the distribution impairs the intact value of the estate, the court will make an apportionment.

3. Where the corporation gives to the trustee the right to subscribe for new stock, the weight of authorities in Pennsylvania would seem to require that it be apportioned.

4. Where the trustee sells stock and the sale in substance effects a distribution, as in case of liquidation of the company, the court will disregard the form and treat the sale as a distribution.

5. Where the trustee sells stock and receives a price greater than the value of the stock at the time of the death of the testator, or at the time it was acquired, the profit being due to an accumulation of income, the court should apportion the proceeds.

6. Where the trustee sells stock and receives a price greater than the value of the stock at the time of the death of the testator, or at the time it was acquired, the increased value being due to the enhancement or increment of original value through the stock's earning power, or what may be termed its "good will" or its intrinsic value, this increased value is part of the corpus and belongs to the remaindermen.

7. Where the stock is held by the trustee, and its value is enhanced by reason of accumulated earnings which have not been declared in dividends, the life tenant is not entitled to payment out of other property of the estate.

8. Where the trustee sells stock at a profit which is due to enhanced market value, and not to accumulated earnings, the increase must be regarded as capital gain.

9. Not decided whether a trustee may be compelled to sell stock which has enhanced in value.

10. Where the orphans' court has assumed that the proceeds of the stock sold included a stated sum of accumulated earnings, and the case was decided on this assumption without contravention, but on appeal this assumption is attacked, and the record shows nothing on which the assumption can be based, the appellate court will affirm the judgment without prejudice to the right of the life tenants to ask that the decree be opened in the court below, in order that satisfactory evidence may be procured as to whether the proceeds included the alleged accumulated earnings.

Argued April 20, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, KEPHART, SADLER and SCHAFFER, JJ.

Appeals, Nos. 170, 171 and 172, Jan. T., 1927, by Samuel F. E. Nirdlinger et al., from decree of O. C.

Phila. Co., July T., 1919, No. 737, dismissing exceptions to adjudication, in estate of Samuel F. Nirdlinger, deceased. Affirmed without prejudice.

Exceptions to adjudication of GEST, J.

The opinion of the Supreme Court states the facts.

Exceptions dismissed in opinion by VAN DUSEN, J., and Samuel F. E. Nirdlinger, Theresa B. Nirdlinger and Frederick Zimmerman Nirdlinger, sons and adopted daughter of testator, appealed.

*Error assigned,* inter alia, was decree, quoting record.

*Francis Shunk Brown,* with him *Charles M. Willits, Francis Shunk Brown, Jr.* and *Ira Jewell Williams,* for appellants.—Life tenants are entitled to income from the investment: Kendall v. Klapperthal Co., 202 Pa. 596; S. G. V. Co. v. S. G. V. Co., 264 Pa. 265; Revloc Supply Co. v. Troxell, 281 Pa. 424; Thomson's Est., 153 Pa. 332.

Undistributed income was included in proceeds received from sale of investment: McKeown's Est., 263 Pa. 78.

The practical difficulty of proving that part of amount received was income does not deprive life tenants of their rights: Mandeville's Est., 286 Pa. 368.

The life tenants are entitled to the difference between the amount invested in the theater companies and the proceeds received from the transaction.

Profits realized from sale of stock are distributable as income: Leech's Est., 4 Pa. D. & C. 1.

The original investment is not impaired and, therefore, surplus received is payable to life tenants: Mandeville's Est., 286 Pa. 368; Oliver's Est., 136 Pa. 43.

Life tenants are entitled to the proceeds received from the sale of stock belonging to the estate and from the assignment of loans which were made by the estate to

the corporations in which the stock was owned: Mc-Keown's Est., 263 Pa. 78; Quay's Est., 253 Pa. 80.

Trustees were engaged in a joint adventure under the corporate fiction of stock ownership: Graham's Est., 198 Pa. 216; Kendall v. Klapperthal Co., 202 Pa. 596; S. G. V. Co. v. S. G. V. Co., 264 Pa. 265; Revloc Supply Co. v. Troxell, 281 Pa. 424; Handley's Est., 212 Pa. 11; Oram v. Pierce, 73 N. J. Eq. 391; Stevens's Case, 95 N. Y. Supp. 297; Park's Est., 173 Pa. 190.

*James Gay Gordon,* for appellees.—Where stock is sold which belonged to the principal of a trust estate all the proceeds thereof also belong to the principal: Graham's Est., 198 Pa. 216; Leech's Est., 4 Pa. D. & C. 6.

The trustees were not engaged in a joint adventure under the corporate fiction of stock ownership.

OPINION BY MR. JUSTICE KEPHART, June 25, 1927:

Samuel F. Nirdlinger died leaving a will devising his entire estate in trust. He authorized his trustees either to retain his securities, or sell them and invest the proceeds, without being limited to those regarded as "legal investments." The "rents, issues, income, dividends and revenue" were to be paid by the trustees to designated beneficiaries for life, and, at their death, the corpus was to pass to remaindermen. In September, 1920, the orphans' court authorized the trustees to enter into an agreement with Erlanger and others by which leases of certain theaters were procured. Five corporations were organized for the purpose of operating the theaters. The trustees became owners of one-fifth of the stock in these corporations, their total financial interest, purchase price and loans, being about $21,370. This stock was sold for $170,000, and it is claimed that $40,000 of this sum represented income earned by the theater companies during the life of the agreement, and was distributable as such to the life tenants under the will.

The auditing judge held that the income must pass with the corpus, and, unless dividends were in fact declared, the rule should not be otherwise. Exceptions to the adjudication having been dismissed by the court in banc, this appeal by the life tenants followed.

The theory of appellants is, that, since the acts of the parties constituted a joint adventure carried on by five close corporations, the corporate fiction should be disregarded and the increased amount received from the investment divided as profits, or the accumulated earnings should be paid to the life tenants, the original investment not being impaired.

In deciding appellant's case, we determine rights as between life tenant and remainderman where trustees sell shares of stock, receiving a price greater than the value of the stock at the time of testator's death, the increase being due in part to an ascertained accumulated surplus from the earnings of the corporation. It is necessary then to review generally these rights where the subject of the trust consists of shares of corporate stock. We must carefully distinguish between the decided cases wherein these rights as they relate to income or earnings in certain aspects have been considered, and the situations which, it is argued, leave open other aspects of income and earnings in which the relative rights have not been ascertained, and evolve, if possible, from the former, a rule for the latter. For convenience we shall consider the subject under the following general heads: the judicial attitude, (A) where earnings qua earnings come into the hands of the trustee through an actual distribution by the corporation; (B) where the earnings are undistributed by the corporation, but their value is reflected in dollars in the hands of the trustee through a sale of the stock by him; and (C) where earnings have not been distributed by the corporation and the stock is unsold in the trustees's hands. Earnings of a corporation may be divided into gross and net, and the net earnings may again be divided into (1) that por-

tion applicable to a usual or customary dividend at a fixed per cent or sum per share, paid at regular periods, and (2) extraordinary dividends which may assume an unusual form and amount, paid at irregular intervals from accumulated surplus or earnings. Both kinds of dividends must, of course, be declared out of earnings or profits.

(A) Where the corporation distributes its earnings in dividends.

1. It is the general rule as to ordinary dividends, well established in Pennsylvania, that when the trustee receives, after the creation of the trust, money as earnings of the estate or income, its source being an ordinary dividend paid by a corporation, it belongs to the life tenants, regardless of how soon thereafter it is declared. The reason given for this rule is that dividends, unlike interest on bonds, are not earned de die ad diem, and, consequently, are not, in the absence of unusual circumstances, apportionable.

2. When the earnings have been permitted to accumulate by a corporation and their proceeds invested in corporate property, in working capital, or retained as cash or its equivalent, and an extraordinary dividend is declared in stock or cash, the respective rights of life tenants and remaindermen have been variously adjudicated. Three rules prevail—the Massachusetts, Pennsylvania and Kentucky rules.

(a) Under the Massachusetts rule, the rights of the life tenant and the remainderman depend on the substance and intent of the action of the corporation in declaring the dividend: Rand v. Hubbell, 115 Mass. 461, 474; Minot v. Paine, 99 Mass. 101, 108, 96 Am. Dec. 705. This means, in general, that all cash dividends are awarded to the life tenant, and all stock dividends to the remainderman.

The Massachusetts rule is one of convenience. In Minot v. Paine, supra, it was said (p. 108): "A trustee needs some plain principle to guide him; and the cestui

que trust ought not to be subjected to the expense of going behind the action of the directors, and investigating the concerns of the corporation, especially if it is out of our jurisdiction. A simple rule is to regard cash dividends, however large, as income, and stock dividends, however made, as capital." It is not claimed that the application of this rule will accomplish exact justice in all cases (see Boardman v. Boardman, 78 Conn. 451, 62 Atl. 339), and it has been admitted at times it is entirely opposed to the intentions of the testator. See D'Ooge v. Leeds, 176 Mass. 558, 560, 57 N. E. 1025. This has led the court to look behind the vote of the directors to discover the substantial purpose of the declaration: Heard v. Eldredge, 109 Mass. 258; Leland v. Hayden, 102 Mass. 542; Davis v. Jackson, 152 Mass. 58, 25 N. E. 21; Lyman v. Pratt, 183 Mass. 58, 66 N. E. 423. The present tendency, as indicated by the cases of Gray v. Hemenway, 212 Mass. 239, 98 N. E. 789, and Boston Safe Deposit & Trust Co. v. Adams, 219 Mass. 175, 106 N. E. 590, seems to lean toward more liberal treatment of the life tenant.

The Massachusetts rule has been applied by the Supreme Court of the United States (Gibbons v. Mahon, 136 U. S. 549) and by the highest courts of Connecticut, Georgia (by statute), Illinois, Maine, North Carolina, Rhode Island and West Virginia. See cases collected in 24 A. L. R. 29. The modern English rule is substantially the same: see Bouch v. Sproule, 12 App. Cas. 385; In re Hopkins, L. R. 18 Eq. 696; Jones v. Evans, (1913) 1 Ch. 23.

(b) Under the Pennsylvania or American Rule, adopted in most American jurisdictions, the rights of the life tenant and the remainderman to an extraordinary cash or a stock dividend declared during the life tenancy are determined by a division of the dividend between the claimants so as to preserve intact the book value of the devised property (the corpus) as it existed at testator's death. This was made clear by the decision in Earp's

App., 28 Pa. 368, long recognized as a leading authority. The effect of the rule is to give to the life tenant the income which has been earned since the trust came into being, but, at the same time, to preserve the value of the corpus as it was at the date of the death of the testator, or, to use a more convenient term, to preserve the intact value of the estate. This intact value includes the par value of the stock plus any accumulation of income earned before the death of the testator: Earp's App., supra. From it must be subtracted capital losses: Dickinson's Est., 285 Pa. 449. In Earp's App., supra, we said, "The distribution of it [the stock dividend] among the stockholders in the form of new certificates has no effect whatsoever upon the equitable right to it. It makes no kind of difference whether this fund is secured by 540 or by 1,350 certificates. Its character cannot be changed by the evidences given to secure it. Part of it is *principal*—the rest is 'income,' within the meaning of the will. The principal must remain unimpaired during the lives of the appellants [life tenants], and the 'income' arising since the death of the testator is to be distributed among them. Standing upon principle and upon the intent of the testator, plainly expressed in his will, we have no difficulty whatever in making this disposition of the fund." In Pritchitt v. Nashville Trust Co., 96 Tenn. 472, 36 S. W. 1064, it was said: "There can be no doubt that reserved and accumulated earnings ......are corporate property; nevertheless, we are unable to see how that fact determines or affects the question of interest therein as between life tenant and remainderman of shares. Those persons acquire their interest under the will or deed, and not through any action of the corporation."

The rule of apportionment of extraordinary dividends has been consistently followed in Pennsylvania from Earp's App., supra, down to Mandeville's Est., 286 Pa. 368. See Smith's Est., 140 Pa. 344; Boyer's App., 224 Pa. 144; Stokes's Est. (No. 1), 240 Pa. 277; Sloan's

Est., 258 Pa. 368; Waterman's Est., 279 Pa. 491; Flaccus's Est., 283 Pa. 185; Wittmer's Est., 283 Pa. 311; Harkness's Est., 283 Pa. 464; Dickinson's Est., 285 Pa. 449. . It has also been widely adopted in other jurisdictions. See In re Gartenlaub's Est., 185 Cal. 375, 197 Pac. 90; Thomas v. Gregg, 78 Md. 545, 28 Atl. 565; Goodwin v. McGaughy, 108 Minn. 248, 122 N. W. 6; Holbrook v. Holbrook, 74 N. H. 201, 66 Atl. 124; Ballantine v. Young, 79 N. J. Eq. 70, 81 Atl. 119; Lang v. Lang's Ex'r., 57 N. J. Eq. 325, 41 Atl. 705; In re Osborne, 209 N. Y. 450, 103 N. E. 723; Wallace v. Wallace, 90 S. C. 61, 72 S. E. 553; Cobb v. Fant, 36 S. C. 1, 14 S. E. 959; Pritchitt v. Nashville Trust Co., supra; In re Heaton, 89 Vt. 550, 571, 96 Atl. 21; Pabst v. Goodrich, 133 Wis. 69, 113 N. W. 398.

(c) Under the Kentucky rule, a dividend, whether of stock or cash goes to the person entitled to receive the income at the time the dividend is declared, without regard to the time when it was earned: Cox v. Gaulbert's Est., 148 Ky. 409, 147 S. W. 25; Hite v. Hite, 93 Ky. 257, 265, 20 S. W. 778; McLouth v. Hunt, 154 N. Y. 179, 48 N. E. 548. This is another rule of convenience. Since the New York Court of Appeals in the case of In re Osborn, supra, decided to abandon this rule (and to follow Pennsylvania), Kentucky is probably the only state adhering to it.

3. There is another situation where a corporation for its own purposes issues new stocks for which rights to subscribe are given shareholders. They are commonly called "rights," and as such have a value. The benefit of these rights, whether sold by the trustee or exercised by taking new stock, is in other states generally awarded to the remaindermen. See DeKoven v. Alsop, 205 Ill. 309, 68 N. E. 930; Lauman v. Foster, 157 Iowa 275, 135 N. W. 14; Hyde v. Holmes, 198 Mass. 287, 84 N. E. 318; Ballantine v. Young, 79 N. J. Eq. 70, 81 Atl. 119; Robertson v. DeBrulatour, 188 N. Y. 312, 80 N. E. 938; Baker v. Thompson, 168 N. Y. Supp. 871, aff'd, 224

N. Y. 591, 120 N. E. 858. In jurisdictions following the Massachusetts rule, this result follows as a logical consequence. In other jurisdictions it would seem the life tenant should receive the benefit of the right so far as it is attributable to earnings that have accumulated during the life interest, provided the intact value of the corpus be maintained. This was the decision in Holbrook v. Holbrook, 74 N. H. 201, 66 Atl. 124. As noted, however, in Lauman v. Foster, supra, the decision in the Holbrook Case is contrary to the great weight of auauthorities.

There is some conflict in the Pennsylvania cases on this point. See Wiltbank's App., 64 Pa. 256, and Moss's App., 83 Pa. 264, where Wiltbank's App., supra, was distinguished upon the ground that the rule there stated applied only where there was an actual profit, whereas in the case then before the court the issue of the new shares reduced the value of the original shares held by the trust estate. See also Biddle's Est., 99 Pa. 278; Eisner's Est., 175 Pa. 143; Veech's Est., 74 Pa. Superior Ct. 373.

In Thompson's Est., 262 Pa. 278, a national bank, incapable of declaring a stock dividend, gave to its stockholders rights to subscribe for new stock, and at the same time declared a dividend exactly equal to the amount of the stock's subscription. The trustee exercised the option, although he did not use the dividend check to pay for the stock, which was claimed by the life tenant. Mr. Justice SIMPSON, in affirming the decree of the court below awarding the stock to the life tenant said that three possible courses were open to the trustee: (1) He could sell the option to subscribe, in which case he would have received more than $20,000 in addition to the cash dividend of $8,000, and the life tenants would have received both cash sums, the remainderman's interest remaining intact; (2) He could refuse to exercise the option which would have probably surcharged him in a sum necessary to make up to the life

tenants the amount they would have received from a
sale of the option; (3) He could have subscribed for the
stock and paid for it exactly with the sum received as a
special dividend, which was the course actually pursued.
Judge HENDERSON, speaking for the Superior Court, in
Veech's Est., supra, distinguished Thompson's Estate
upon the ground that a dividend was declared by the
corporation. This does not seem to be reconcilable with
our opinion as written by Mr. Justice SIMPSON.

(B) The question under this division arises where
earnings are undistributed and the stock with earnings
as value included therein is sold. The corporation has,
undivided, an accumulation of earnings, profits or in-
come, called surplus. It is rightfully divisible among the
shareholders if the managers of the corporation should
choose to distribute it. The trustees, as shareholders, in
right of the estate, would be entitled to participate in such
distribution. In McKeown's Est., 263 Pa. 78, one phase
of accumulated earnings presented itself when the stock
of one company was sold by its shareholders to another
concern. What actually happened was a sale of stock
by the trustee, but we treated it as a distribution by a
corporation in the course of liquidation. A part of the
proceeds was accumulated earnings; we held it should
be distributed as though the company had in fact de-
clared a dividend, and hence was payable to the life ten-
ant, the intact value being unimpaired. The facts in
that case, important to the instant case, were substan-
tially as follows: Four thousand shares of stock of the
Pure Oil Company at the death of testator had an in-
tact value of $12.22 a share. It was sold for $24.50 a
share to an Ohio company, which acquired all Pure Oil
Stock. The book value at this time was $15.18, the dif-
ference, $2.96, being due to accumulation of earnings.
The difference between the selling price and the then
book value, $9.32, represented the inherent, intrinsic, or
supervalue of the stock over and above its then book
value, and was awarded, without objection, to the cor-

pus of the estate. The life tenant claimed the accumulated profits, or $2.96 per share. The court below refused to allow the claim, and was reversed by this court in an opinion by Mr. Justice SIMPSON. It may be well to state that, in reaching our conclusion in that case, it was necessary to consider generally the respective rights of life tenants and remaindermen in all situations similar to that which we were then called upon to determine, and also the general effect of that decision as bearing upon other similar situations of a slightly different nature emanating through similar channels. To strip that authority of its persuasive effect in other disputes, is to deny the correct and logical foundation on which it is based, as well as its logical sequence. We will not detail the reasoning on which we reached the conclusion that accumulated earnings, not declared by dividends, but realized on a sale, belong to the life tenant, but will state the four primary rules evolved by Mr. Justice SIMPSON from the decided cases. "(1) An ordinary corporate dividend is usually payable in its entirety to the party entitled to the income at the time the dividend was declared. (2) An extraordinary corporate dividend is presumptively payable to the party entitled to the income at the time the dividend was declared; but this presumption must yield to proof of the fact, and if it appears that by such dividend the corporate assets are reduced below their value at the time the trust began, the principal must be made good before anything is awarded to income. (3) If stock is sold which belongs to the principal, ordinarily all the proceeds thereof also belong to the principal. (4) When a corporation is liquidated, those entitled to the income of the trust are to be awarded so much of the sums received for the stock as they show was income accruing after their right to income began, and the balance goes to principal; and this is so although the course pursued takes the form of a sale of the stock." The auditing judge in McKeown's Estate found the sale of the stock by the trustee, includ-

ing accumulated and undistributed income as part of its value, amounted to a liquidation of the oil company and the distribution by it of the corporate earnings. The instant case, though of slightly different aspect, is governed by the principle controlling the last of these general rules.

Where the trustee in an ordinary business transaction sells stock, the value of which has been enhanced by accumulated surplus and earnings not declared as a dividend by the corporation, what distribution should be made of the accumulated earnings and surplus? Should it go to the life tenant or to the remainderman? Or, in other words, why should the minor liquidation of interest in a corporation by a member thereof in selling his shares of stock therein not be effective as a liquidation which reflects substantially a distribution by the corporation of its accumulated earnings and increment value by reason of that membership? It would seem the reasoning in McKeown's Est., supra, and Earp's App., supra, answers the general question in the affirmative. Earp's App., supra, p. 374, states: "The managers might withhold the distribution of it for a time, for reasons beneficial to the interests of the parties entitled. But they could not, by any form of procedure whatever deprive the owners of it, and give it to others not entitled. The omission to distribute it semiannually, as it accumulated, makes no change in its ownership."

The profits or income of a corporation is earned by the capital stock and may be declared as a dividend by the managers: Struthers v. Clark, 30 Pa. 210, 213. The capital stock is evidence of the estate's ownership in the corporation; it is the estate's certificate of membership in the association measured by so many shares. These shares earn for the estate a proportionate share of the income, profit or earnings of the company. When a dividend rate is fixed, so much of these earnings, necessary for payment, are taken from the corporate stock, represented by income, and the balance is carried forward as

an accumulation of income, surplus or profits. This accumulation may be retained by the company to enlarge the business or to provide working capital, or as a reserve fund to provide against losses. These may be transferred into capital account, where the evidence may be stock distributed as an extraordinary dividend. Where the earned accumulations remain in the company undisposed of, the shareholders' interest therein and right thereto is undisturbed; no matter what such accumulations may be called by the corporation or what form they may assume, the names do not aid in determining the rights of the life tenant and remaindermen to such income.

The testator gave the income of his estate to the life tenants. "Income" may be defined as a gain which proceeds from labor, business or property of any kind, the profits of commerce or business. It includes the return earned by capital stock. It has a broader meaning than the term "dividend"; it includes profits. We said in Quay's Est., 253 Pa. 80, that profits included not only the accumulations of earnings, but the advances or increment in value. It is not necessary to include the latter in the definition. What the testator did was to give to the life tenant all this income. It included all the earnings which his membership in the company or ownership in stock are responsible for, or would bring about, but not the stock's earning power. That inheres in the stock. Income of the corporation is a product of capital, part of which was furnished and owned by this estate: Com. v. Pitts., Fort Wayne and Chicago Ry. Co., 74 Pa. 83, 90. Therefore every principle of justice demands that the direction of testator be fulfilled, and that life tenants should receive this income. There is not one single element of justice that speaks for the corpus of the estate to take the earnings. The mere fact that it is earned and retained by the company should not prevent the life tenants from ultimately receiving it unless that receipt does harm to

the corpus (intact value) of the estate.  Where the intact value is in money in the trustee's hands, as here $21,370, with the assumed accumulated surplus, $40,000, and the increment in value, $110,000, also in money, to hold that the corpus should be entitled to all would be to disregard the positive instructions of the testator; the income at least should be given to his life tenant beneficiaries.

The argument most generally advanced is that as the accumulated earnings are definitely ascertained as to time and amount by the corporation the managers alone are responsible for its division among members.  They should be permitted freely to discharge that duty to their fellow members by distributing the earnings in a manner and at a time which to them shall be deemed most advantageous for the corporation itself.  This overlooks the really important question in this and other cases; it is not the right between the corporation on the one side and the life tenant and remaindermen on the other that we are discussing, but the right as between the latter two; as stated by Mr. Justice SIMPSON in McKeown's Est., supra, p. 84: "That is a matter solely between the corporation and the stockholder, and does not necessarily determine the rights of a life tenant and remainderman in an estate owning such stock.  If the company declares a dividend, whether of stock or cash, partially out of earnings and partially out of principal, a court of equity, made cognizant of the fact, will apportion the dividend between the life tenant and the remainderman, in such a way as to maintain intact the principal of the estate, only giving the balance to the life tenant.  So also, if a corporation sells its capital and accumulated income for a gross sum, a court of equity should distribute that sum according to like equitable principles."  We are not interested in the conduct of the affairs of the corporation.

Courts, in determining rights as between life tenants and remaindermen, do not endeavor to control, manage

or direct the internal affairs of a company, nor do they attempt to require that money held as surplus for corporate reasons shall be divided among the members in order that any one member shall receive the accumulated earnings. Nothing is done that, in the slightest, involves the financial structure of the company. When a trustee sells the stock of a company and the profit represents an accumulation of earnings or surplus in addition to intact value, he has physical possession of the income apart from any other consideration. The only screen held up to defeat the life tenants is that the corporation did not formally declare it as a dividend, though it has every such quality, except the name, withheld by the company. In such cases, the sale, in substance and effect, amounts to a distribution, as in the case of liquidation of a corporation. The court will disregard the form, and treat it as a distribution of accumulated interest or earnings, keeping in mind always that the intact value of the corpus shall not be in any way depleted. Equity looks through the form and holds to the substance, and will distribute that sum according to equitable principles. In Quay's Est., supra, the court went farther than is necessary for us to do, but the case illustrates the judicial leaning toward the rule that accumulated earnings should go to the life tenant and remaindermen in a just proportion as indicated in the distribution of stock dividends. In Peterson's Est., 242 Pa. 330, where there was a distribution of accumulated earnings worth many times more than the intact value at death, we said, (pp. 333-4) : "These earnings were income pure and simple; the fact that they were allowed to accumulate instead of being regularly distributed did not change their character in this regard. Being income, and so far in excess of the reasonable and legitimate requirements of the business of the corporation that its distribution could have been enforced at any time by those entitled to receive it, their permitting it to accumulate was on their part the assertion of ownership.

Mrs. Peterson was the undoubted owner in her own right of a share in these accumulations in the proportion that the 250 shares of stock in the trust fund stood to the whole issue of stock. This was hers to do with as she pleased; it was free from any trust; leaving it in the corporation was her own act, and the corporation thereupon became her debtor to that extent." The income was undoubtedly Mrs. Peterson's. When the company distributed it after her death, her husband was entitled to receive it regardless of the form it took.

The question has been before courts of other jurisdictions. In Simpson v. Millsaps, 80 Miss. 239, 31 So. 912, a testator directed his trustees to pay to the life tenant the entire net income of his estate and part of the estate was invested in bank stock, the earnings of which were accumulated instead of being distributed. The trustees sold the stock and it was held that the accumulated earnings were the property of the life tenant. In United States Trust Co. v. Heye, 224 N. Y. 242, 120 N. E. 645, 648, the New York Court of Appeals, which is committed to the Pennsylvania rule, in discussing situations like this, said: "The fundamental principle involved in these questions is whether there has been a distribution or division of the earnings, profits or accumulations of the corporation. Until there has been such division, the life tenant is not entitled to any increase in the value of the principal of the trust fund, or the capital and assets of the corporation, shares of which constitute the trust fund. *But when there has been a division of the corporate property, no matter what form it may take,* that part thereof which consists of accumulated profits or earnings belongs to the life tenant and that which is capital to the remainderman." In Schaffer's Est., 165 N. Y. Supp. 19, 222 New York 533, 118 N. E. 1076, stock, held by trustees for the benefit of the life tenant and remaindermen, was sold for more than the intact value. During the years the trustees held the stock, the company did not distribute all the profits

but retained a portion of the net earnings each year as a surplus or profit. "These profits......went to the enhancement of the assets and it is to the rentention and investment of this surplus that at least some of the increasing value of the stock is to be attributed." After stating the three rules as to the disposition of dividends, the court said: "These general rules are not questioned by the trustees, but they say that they are inapplicable here because there had been no payment by way of dividend and no liquidation of the company, which still remains a going concern......It is true that there has been no general liquidation of the company but there has been a liquidation so far as concerns one-half of its capital stock......The trustees have at least liquidated, —that is to say, have turned into money,—their interest in the company which was formerly represented by shares of stock. What does this money in their hands represent? Concededly, it represents in part accumulated profits earned during the lifetime of the trust, ......Otherwise,......the accumulated profits will go to the unlawful increase of the corpus of the estate and the enrichment of the remaindermen at the expense of the life beneficiary." The life tenant had apportioned to him so much of the surplus as was earned during the trust.

In Wallace v. Wallace, 90 S. C. 61, 72 S. E. 553, where the trustees sold stock after the death of the life tenant, it was held that accumulated earnings of a corporation should be distributed between the life tenant and remaindermen according to the time such earnings are made and not according to the chance action of corporate officers in withholding or declaring dividends. This, of course, has reference to earnings accumulated during the life tenancy. To the same effect is the Sherman Trust Case, 190 Iowa 1385, 179 N. W. 109, the court there saying, "As between remaindermen and life tenants the question is not what corporation management may do about declaring dividends so far as stock-

holders are concerned. What these managements may do is corporation law. What the rights of the remaindermen and life tenants are in corporation shares is a question of what it may reasonably be found was the intent of the creator of the trust." As the court intimates, there is not a single disposition which required the income to be subjected to the hard and fast rule of corporation law in the distribution of dividends. On the other hand, the Kentucky court, in Guthrie's Trustee v. Aikers, 157 Ky. 149, 163 S. W. 1117, there intimated that they placed it in the power of the corporation "to enhance the interests of the remaindermen, to the injury of the life tenant." But if, on the other hand, the trustee may sell and thus in effect declare a dividend, it would produce the same result as if the corporation did it. Schaeffer's Est., supra, is in line with the thought of this opinion, and wherever Connolly's Est. (No. 1), 198 Pa. 137, touches the question, McKeown's App., supra, overrules it. In Connolly's Est. (No. 1), supra, p. 143, it is stated: "The increase in value of these stocks is no doubt due in part to surplus earnings retained by the corporation......also in part to the enhancement of their original value. 'Such enhancement belongs not to the tenant for life but to the remainderman': Eisner's Est., 175 Pa. 143; and as there is no evidence here from which the proportions of the increase due to the surplus earnings and to the enhancement of the original value of the stock can be found......Earp's Appeal should not be followed." The rise in the value of trust investments, where such rise has not been shown by one claiming as a life tenant to be due to undistributed earnings, has always been properly regarded, like the rise in the value of lands held in trust, to be an accretion of the principal, and, therefore, belongs to the remainderman. See Park's Est., 173 Pa. 190.

From what we have said, it follows that where the trustee sells stock which represents in part accumulated earnings sufficiently ear marked that they can be ascer-

tained, the life tenants are entitled to an apportionment of these earnings, not in any manner reducing the intact value of the corpus. This is true regardless of the form, whether in stock after death, as in Peterson's Estate, cash, as in this and McKeown's Estate, or other corporate securities, is immaterial. There is one condition to which this rule is subject, wherein it would seem that part of the earnings should go to the corpus of the estate; this is where the stock is sold when an ordinary dividend is anticipated, but not paid. The fact that the price appears to have been enhanced by reason thereof, or that the price may represent, in part, expected dividends, does not entitle the life tenant to that increase. In McKeown's Est., supra, it was held that the seven cents per share was in fact earnings which were to be declared as an ordinary, regular dividend and the sale of the stock by the trustee before they were payable permitted the new holder, the purchaser, to receive the dividend. The vendor was not entitled to it as a current dividend until it was declared, and the increase should be considered as increment.

But it is said that it would be extremely difficult to prove how much of the price realized in fact represented income. This should not be difficult at this time. The United States Government requires a fairly regular set of books to be kept for income return. Therein depreciation, renewals, reserves, replacements, and all the various charges are kept. There is the fixed fact, the amount realized from the sale of the stock. There is the amount set apart as earnings, divided into dividends paid and undivided as surplus which may be found in the "profit and loss" account. This may not be conclusive or the only method, but it is an illustration. However the accounts are kept, it is quite easy to strike a balance; but, even if it is difficult, "the difficulty of proving a fact," as Mr. Justice SIMPSON observes in McKeown's Est., supra, "has never been held to deprive one of a right, growing out of such fact, if and when proved;

and as to the former it is sufficient to say that in a court of equity, as the orphans' court is within the sphere of its jurisdiction, substance is never sacrificed to form," even though the corporation may be of another state. These difficulties are often present. That much litigation would follow is no objection; there will always be litigation over estates when testators choose to place them in a position for litigation.

Again, it is said innumerable difficulties would beset the trustee in deciding whether or not he should sell or hold the securities in order not to be liable in case of depletion for holding them. Where the authorizing instrument permits the investment in nonlegal securities, it should not be troublesome. The readers' attention is invited to the opinion of the Chief Justice in Taylor's Est., 277 Pa. 518 and to Brown's Est., 287 Pa. 501, wherein these questions are discussed.

(C) This brings us to the last matter which may have any bearing on the question: May the trustee who holds the stock be required to distribute these earnings out of other property of the estate, or may he be required to sell the stock in order to realize the accumulated earnings? As to the first proposition, the answer must, of course, be in the negative. The stock, with its accumulated earnings and intact value and whatever other element of value which may attach to it, is subject to the vicissitudes of corporate life, and as such it must bear its share of whatever comes and goes. Other property of the estate cannot be required to be set apart to pay life tenants the accumulated surplus retained by the corporation. The surplus and all other items of value remain, subject to debts, reverses, losses and decline in value because of business conditions. As long as the stock remains in the hands of the trustee, he is not required to account to life tenants for anything except the dividends received. Therefore, such requirements cannot be considered in the management of the estate; and in this connection we may say the increment of value in

the stock itself, or the intrinsic value of the stock, is the property of the remainderman. This refers, in the Mc-Keown's Est., supra, to the $9.32 above noted.

As to the right to compel the trustee to sell such stock through petition in the orphans' court, we express no opinion. Generally speaking, it is subject to the same rules that govern any property in the hands of a trustee. Whether it be for the best interest of the estate to make a sale under given circumstances or not, is addressed largely to the discretion of the court below. As to the possible liability of the trustee for failure to make a sale, this, as we suggested above, is determined by the rules in the cases before referred to in this opinion.

In conclusion we may summarize what has been said above. First, an ordinary dividend belongs entirely to the life tenant (McKeen's App., 42 Pa. 479, and see Mc-Keown's Est., 263 Pa. 78, 85). Second, an extraordinary dividend paid out of accumulated earnings, presumptively belongs to the life tenant but, if it be shown that the distribution impairs the intact value of the estate, the court will make an apportionment (Earp's App., 28 Pa. 368). Third, where the corporation gives to the trustee the right to subscribe for new stock, the weight of the authorities in this State would seem to require that it be apportioned (see Wiltbank's App., 64 Pa. 256; Moss's App., 83 Pa. 264; Eisner's Est., 175 Pa. 143; Thompson's Est., 262 Pa. 278. Fourth, where the trustee sells stock and the sale in substance effects a distribution, as in the case of liquidation of the company, the court will disregard the form and treat the sale as a distribution (McKeown's Est., supra). Fifth, where the trustee sells stock and receives a price greater than the value of the stock at the time of the death of the testator, or at the time it was acquired, the profit being due to an accumulation of income, the court should apportion the proceeds. Sixth, where the trustee sells stock and receives a price greater than the value of the stock at the time of the death of the testator, or at the

time it was acquired, the super value being due to the enhancement or increment of original value through the stock's earning power or what may be termed its "good will" or its intrinsic value, this increased value is part of the corpus and belongs to the remainderman. Seventh, where the stock is held by the trustee, and its value is enhanced by reason of accumulated earnings which have not been declared in dividends, the life tenant is not entitled to payment out of other property of the estate. Eighth, where the trustee sells stock at a profit which is due to enhanced market value, and not to accumulated earnings, the increase must be regarded as a capital gain (Connolly's Est. (No. 1), 198 Pa. 137, 141, 143; and see Neel's Est. (No. 2), 207 Pa. 446; McKeown's Est., 263 Pa. 78).

We have noted in this opinion that the intact value of this present estate was about $20,000. The sale price was $170,000, and it was assumed by Judge GEST and the court in banc that $40,000 of this sum represented accumulated earnings. It was on that basis the case was decided and evidently the court below was impressed with the fact that the accumulated surplus had been sufficiently proven. When we turn to the record we notice the statements of counsel that this was a fact, and appellee did not then controvert it. When the case was argued in this court by appellant, it was on the basis that such income did exist. This conclusion was strenuously resisted by the present appellees here, and, as we read the record, there is nothing which adequately supports a finding of $40,000 surplus. There was undoubtedly considerable confusion as to this primary fact evidenced by the manner in which it and other facts were stated. No doubt the court below felt that the statement of counsel had been accepted by appellees because of their silence. We could not reverse a judgment when the record is in this shape, but we realize that it is not entirely just to appellants who seemed to rely upon the fact that statements of counsel were apparently ac-

cepted as proof. The only judgment we can enter here is one of affirmance without prejudice to the right of appellants to ask that the judgment be opened in the court below in order that satisfactory evidence may be procured to prove that the purchase price included $40,000 accumulated earnings.

The judgment is affirmed without prejudice, as last above stated, at the cost of appellants.