## Baird's Estate.

*James S. Rogers*, for life-tenants; *J. Claude Bedford*, for remainderman. *Theodore S. Paul*, for trustee.

STEARNE, J., July 5, 1929.—The life-tenants and the remainderman both object to the distribution directed by the Auditing Judge of the proceeds of sale of corporate stock.

Oral and documentary evidence was presented which is largely undisputed. An agreed stipulation as to the facts and figures was presented to the Auditing Judge, the effect and legal deductions to be drawn therefrom being largely the basis of the present controversy.

The record discloses that decedent died June 17, 1918, possessed of the entire capital of the Acme Staple Company, which capital consisted of 1000 shares of the par value of $100 each. The stock was sold by the trustee, and the Auditing Judge directed the distribution of the fund as between the life-tenants and the remainderman as follows:

| | | |
|---|---:|---:|
| Proceeds of sale of stock | | $255,000.00 |
| Book value at death | $109,877.05 | |
| Excessive depreciation restored | 8,480.00 | |
| | $118,357.05 | |
| Dividends advanced decedent, in lifetime, but declared after death, deducted | 15,500.00 | |
| Intact value | $102,857.05 | |
| Gain to life-tenants | 152,142.95 | |
| | | $255,000.00 |

Neither exceptant objects to the deduction of the dividend item of $15,500 as above. Decedent had, in his lifetime, already withdrawn this sum out of surplus on account of anticipated dividends, and, therefore, it is quite proper that the surplus account, in determining "intact value" of the stock, should be

reduced by this sum, even though the actual declaration of the dividend was deferred until after the death.

The life-tenants object to the inclusion in the "intact value" of the item of $8480 (excessive depreciation). The remainderman contends that the Auditing Judge should also have added to the "intact value" an item of $45,555.20, which the corporation had written off its books in the decedent's lifetime, but which was subsequently restored by the directors after his death.

Nirdlinger's Estate, 290 Pa. 457, is the leading authority in Pennsylvania concerning the present subject-matter, and lays down the rules for our judicial determination.

As the stock was sold, and there is no question of cash or stock dividend involved, the case comes under the general head (page 461) "(B) where earnings are undistributed by the corporation, but their value is reflected in dollars in the hands of the trustee, through a sale of the stock by him."

Mr. Justice Kephart, speaking for the court, says (page 475) : "Where the trustee sells stock which represents, in part, accumulated earnings sufficiently earmarked that they can be ascertained, the life-tenants are entitled to an apportionment of these earnings, not in any manner reducing the intact value of the corpus."

"Intact value" is defined by the court as follows: "The effect of the rule is to give to the life-tenants the income which has been earned since the trust came into being, but, at the same time, to preserve the value of the corpus as it was at the date of the death of the testator, or, to use a more convenient term, to preserve the intact value of the estate. This intact value includes the par value of the stock, plus any accumulation of income, earned before the death of the testator . . . from it must be subtracted capital losses."

The court also said (page 471) : ". . . The courts do not endeavor to control, manage or direct the internal affairs of a company."

### Item of $8480.

By the stipulation the parties agreed that the corporation charged from its books an excessive amount of depreciation from 1915 to 1926, of which $8480 was excessively charged off during the period preceding decedent's death. The books were corrected after the death. The real effect of this adjustment was to correct a mistake. Had the correct amount of depreciation been deducted instead of the excessive sum, the book value at the death would have been $8480 greater. Because the directors of the corporation, even after the death, corrected this mistake on their books, we can discover no error on the part of the Auditing Judge in adding this amount to the book value of the stock. Justice and equity would seem to indicate that such adjustment was properly made.

### Item of $45,555.20.

Two boards of directors of the corporation valued assets possessed by the corporation at two separate figures. When the corporation was formed, certain assets, consisting of "unexpired lease, fire policies, patent rights, goodwill and trade names," were purchased at an agreed value of $51,397.84, and for which capital stock was issued. On Nov. 30, 1917 (about a year prior to the death), the corporation charged from its books an item of $45,555.20. Thereafter such item (with an unexplained slight addition thereto) left such articles valued at $6233.99. The book value of the stock at the date of death reflected in its value this latter figure.

A year after the death the board of directors restored to the books the item of $45,555.20, and thereafter, and until the sale, carried the assets on its books

at $51,789.19, under the style and title "patent rights, trade-mark and good-will."

The remainderman insists that this item be added to the book value as of the date of decedent's death.

It must be noted that the action of the board *after the death* was not an attempt to correct a mistake made *before the death*. One board valued the assets at one figure and the other board at a different figure. Certainly this court is not called upon to determine which of the two boards correctly valued the assets. The Supreme Court clearly states that we are not concerned with the internal management of the corporation. This court is interested only in preserving the intact value of the principal for the remainderman and to see to it that no income is improperly accumulated and withheld from the life-tenants. As there is no allegation or proof of fraud, accident or mistake, we feel we are bound by the figures as they appeared on the books of the corporation at the time of the death.

While the Auditing Judge was not obliged to hear testimony concerning this item, nevertheless, he did so, and makes an absolute finding that there was no value in such assets. As the finding of an Auditing Judge will not be disturbed except for manifest error, and there appears to be none, this finding should conclusively and finally settle all questions.

Upon a careful review of the entire record, we are convinced that the Auditing Judge has committed no reversible error. All the exceptions are dismissed and the adjudication is confirmed absolutely.

LAMORELLE, P. J., did not sit.