## Bullitt's Estate.

The facts appear from the following extract from the adjudication of

HENDERSON, J., Auditing Judge.—The testator at his death was the owner of 1150 shares of the stock of this corporation [Virginia Coal and Iron Company]. On July 3, 1918, the trustees received a stock dividend of 383 shares,

which, by agreement of the parties, was awarded to corpus by the adjudication of the fourth account filed in 1919. A second stock dividend of 1595 shares was received by the trustees on July 1, 1928, and I must now determine to whom it belongs.

Counsel for Mrs. Browne concedes that the adjudication of 1919 may not now be opened to correct any errors, but he contends that the intact value of the 1150 shares should be maintained as of the date of Mr. Bullitt's death, ignoring entirely the 383 shares, which he contends were only awarded to principal to maintain the intact value of the 1150 shares, while the other parties contend that the intact value of the 1150 shares, plus the dividend of the 383 shares awarded to corpus, should be maintained as of their intact value after the stock dividend of 383 shares was declared.

The argument of Mrs. Browne is that this stock dividend is presumptively income, and, while she may not attack the adjudication of 1919, she is entitled to everything beyond the intact value of this stock at the date of the testator's death. If she may thus proceed she can secure the benefit of the dividend of 383 shares awarded to corpus. Both parties hesitate to call that award an error; they would resent the implications of such an admission. Both sides contend that Stetson's Estate, 305 Pa. 62, prevents the other from maintaining the positions now contended for.

It becomes my duty to interpret the adjudication of 1919. Therein I merely find, by agreement of the parties, an award of the dividend of 383 shares to corpus. I must assume that this award was proper and, being proper, it was necessary to maintain the intact value of the shares left by the decedent.

Mrs. Browne argues that thereby the intact value is increased and this should not be. Were it necessary for me to answer this contention I could logically reply the award might have been necessary due to an increase of capital assets. However, I should not speculate.

The award of the dividend of 383 shares to corpus is equivalent to a finding of fact that they were needed to maintain the intact value of the stock held by the estate; hence it would be error to deduct them. To do so would permit the life tenants, by indirection, to open the adjudication of 1919 to correct an alleged miscalculation.

Before proceeding to dispose of this new dividend, I will advert to the agreement and petition for distribution in connection with the adjudication of 1919.

The agreement, although not attached to that adjudication, has been now placed in the record and is as follows:

"Philadelphia    1919.

"We, the undersigned, being all of the beneficiaries under the will of John C. Bullitt, Deceased, presently entitled to the income therefrom, do hereby request that the stock dividend of three hundred eighty three (383) shares, which the Trustees under the Will of John C. Bullitt, Deceased, received from the Virginia Coal & Iron Company in July, 1918, be awarded back to the said Trustees as a part of the principal of the Estate, to be held for future accounting, and we do hereby agree that such an award be made.

| | |
|---|---|
| Theresa L. Coles | Logan M. Bullitt |
| Langhorne Bullitt Dick | Maria R. La Rue |
| James F. Bullitt | John C. Bullitt, 3rd. |
| Orville H. Bullitt | Kate Furness Thompson |
| Fairman Rogers Furness | John C. Bullitt, Jr. |

(Jos. J. Doran - H. Gordon McCouch, - Trustees<br>John C. Bullitt, Jr.)"

It should be noted that John C. Bullitt, Jr., has executed this agreement both as life tenant and as trustee. Mrs. Browne, his appointee, must stand in his shoes, and may not dispute what he has agreed to.

The life tenants argue that this agreement was not put on the record at the audit of 1919 and only now offered. The question was raised and submitted to the Auditing Judge, as appears from the petition for distribution which contains the following averments:

"As appears from the account (p. 16) the accountants received on July 3, 1918, from the Virginia Coal and Iron Company a stock dividend of 33⅓ per cent. on 1150 shares, or 383 shares, which are held subject to the determination of the court as to the proper apportionment between principal and income."

And in that petition the accountants suggest:

"That the balances of principal as well as 383 shares of Virginia Coal and Iron Company received as a stock dividend on July 18th should be awarded back to the trustees for further accounting."

In speaking of the award of these 383 shares by the adjudication of 1919, counsel for Mrs. Browne says in his brief: ". . . the court treated the stock exactly as it would have been done had it determined the award to be necessary to preserve the intact value as of the date of Mr. Bullitt's death."

This is just what was done, and done at the request of the parties, and they may not now complain that they made an error in their agreement. The action of the court constituted a finding of fact which may not now be inquired into.

The award will be made under the facts set out in stipulations 8, 13, 15, 16 and 19.

Immediately after the dividend of 1918, the book value of a share was $218.332. The estate then had 1150 old and 383 dividend shares awarded to corpus, a total of 1533 shares. The calculation of the intact value to be maintained will be made as follows:

| | |
|---|---|
| 1533 shares held by corpus after stock dividend of 7/1/1918 @ $218.332 | $334,702.96 |
| 62 shares purchased by trustees | 14,836.26 |
| 1595 shares, whose intact value is | $349,539.22 |
| Intact value per share | $219.1468 |
| Add share of contributed surplus | 20.3100 |
| Add share of capital gains | 5.7004 |
| Intact value per share to be maintained | $245.1572 |
| Book value per share after stock dividend of 9/1/28 | 121.0939 |
| Impairment per share | $124.0633 |

As the impairment per share is greater than the book value after the 100 per cent. stock dividend of July 1, 1928, it follows that this entire dividend must be awarded to corpus.

While there are no earnings since July 1, 1928, to be awarded the life tenants, it should be pointed out that this account shows a stock dividend in September, 1923, of 246.56 shares, all of which were distributed to the life tenants and thereby they have received earnings accumulated between July, 1918, and the same month in 1928.

Counsel for Mrs. Browne contend that certain stipulations of fact preclude this finding. I need only point out, however, that such as are mere calculations from other agreed facts, are mere conclusions of law and have only been included for convenience of the court.

The claim of Mrs. Browne for any share of this stock dividend is dismissed.

*Boyd Lee Spahr* and *Robert Brigham*, of Ballard, Spahr, Andrews & Ingersoll, for exceptant.

*Albert B. Maris* and *T. R. White*, of White, Parry, Schnader & Maris, *Palmer Watson* and *Leslie M. Swope* and *Henry S. Drinker, Jr.*, of Dickson, Beitler & McCouch, contra.

STEARNE, J., January 8, 1932.—The basic principle of Nirdlinger's Estate, 290 Pa. 457, and the numerous cases decided thereafter, is to equitably apportion, between life tenant and remainderman, the profit realized in the holding, or through a sale, of securities possessed by the trust estate. A remainderman may not profit at the expense of a life tenant where earned profits are withheld, added to surplus, and a gain realized when the stock is sold, with the earnings, as value, reflected therein, or where a stock dividend is declared. In such case the gain must be equitably apportioned between life tenant and remainderman. For the protection of the remainderman, however, when making such apportionment, the intact value must be maintained.

Stock was possessed by this estate on which, in 1918, a stock dividend was declared and paid to the trustees. Unquestionably, a large part, if not all, of such stock dividend was then payable to the life tenants because of the increase in value due to accumulated earnings from the date of decedent's death in 1902. However, at the audit of the trustees' account in 1919, at the request of the life tenants, this stock dividend was added to principal.

In 1928, a second stock dividend was declared. It is to be remembered that at this time the assets, or surplus, representing the stock dividend of 1918, had been then added to the capital. Therefore, the capital of the corporation upon which the 1928 stock dividend was based was the enlarged capital so enhanced by the surplus added to such capital by the 1918 stock dividend. The ownership or apportionment of the 1928 stock dividend, as between life tenants and remaindermen, is now before the court.

The question narrows itself to this: Is it the intact or book value of the stock in 1918 as determined by the adjudication in 1919 which must be maintained for the benefit of the remaindermen, or may the life tenants insist upon the acceptance of the intact value of the capital stock as it existed at the time of decedent's death? The Auditing Judge ruled that it was the value of the stock in 1918, as determined by the adjudication of 1919, which must be maintained because of the agreement of the parties which was approved and acted upon by the court.

If this court erred in 1919 when, at the request of the life tenants, it added the stock to principal, then the remedy would be by petition for review. But this remedy is unavailing by reason of the decision of the Supreme Court in Stetson's Estate, 305 Pa. 62. To allow what one of the present life tenants now desires would be to permit by indirection that which is forbidden.

A majority of the court are of the opinion that the Auditing Judge correctly ruled upon this question. All exceptions are dismissed and the adjudication is confirmed absolutely.

VAN DUSEN, J., dissenting.—At the time of testator's death, he held 1150 shares of stock of Virginia Coal and Iron Company which passed to his trustees, and which had a book value of $145.9259 per share. In 1918 a stock

dividend of 33⅓ per cent. was declared, of which the trustees received 383 shares. After the dividend, each share had a book value of $218.332 per share, so that intact value was not impaired. The stock dividend was noted in an account, filed and audited in 1919, and the question of its allocation was raised in the petition for distribution with a prayer for an award to principal. The adjudication does not notice or decide the question, but the schedule of distribution awards these shares to principal at no value. The record at that time is barren of information as to why this was done. There is no testimony or agreed statement of facts or findings of fact or law in the record. Now an agreement of parties interested is produced, which was executed at that time, whereby it was agreed that these shares might be awarded to principal.

I agree that this judgment is conclusive as to the fact accomplished by it, whether it was right or wrong, and whatever the reason for it. So much of the surplus of 1918 as was made available for income at that time by the action of the directors in declaring a stock dividend has been put into principal, and there it must stay.

When, then, a 100 per cent. stock dividend was declared in 1928, of which the trust received 1595 shares, the amount to be preserved for principal was as follows:

| | | |
|---|---|---|
| Intact value of original 1150 shares at $145.9259 | | $167,814.785 |
| Book value of 383 shares stock dividend of 1918 at $218.332 | | 83,621.539 |
| Cost of 62 shares purchased | | 14,836.26 |
| (Stipulation 14 b) | | $266,272.584 |
| Contributed surplus per share | $20.31 | |
| Capital gains per share | 5.7004 | |
| 1595 x | $26.0104 | 41,486.588 |
| | | $307,759.172, |

or $192.9525 per share for 3190 shares (17 b). The stock dividend is *prima facie* income. After the 1928 dividend, the book value of each share was $121.0939, and of the whole 3190 shares $386,289.54. Therefore, the equivalent of $78,530.37 goes to income, which, at $121.0939 a share, is 648 shares and $61.75 in cash.

The award of the Auditing Judge is based on the conclusion that the 1919 adjudication awarded to principal all the surplus as it existed at the time of the 1918 dividend. This cannot be. It is obvious from the figures now furnished that there was a very large surplus which was not distributed by the 1918 dividend. If it had been, after-dividend value would have been $145.9259, whereas it was in fact $218.332. So much of the surplus as is represented by the difference between $145.9259 and $218.332 had not been put by the directors of the Virginia Coal and Iron Company in such form that it could have been allotted to either principal or income; and was not and could not have been adjudicated.

I would sustain the exceptions of Edna D. Browne numbered 1, 2, 5 (b), 6 (b), 7, 10 and 15, and award to her one-seventh of income as ascertained above, to wit, ninety-two shares of Virginia Coal and Iron Company at $121.0939 per share, and $78.01 in cash, less commissions to the trustees.