## Wilford Estate (No. 2)

*Edmonds, Obermayer & Rebmann* and *Duffy, McTighe & McElhone*, for accountants.

*Waters, Cooper & Gallager* and *Cummings & French*, for exceptant.

*High, Swartz, Childs & Roberts*, for guardian ad litem.

TAXIS, P. J., March 15, 1956.—The third account of Provident Trust Company of Philadelphia, Jona-

than S. Wilford and E. Burke Wilford, substituted trustees for Jonathan S. Wilford, was examined and audited by the court on December 22, 1955. . . .

The account was filed because of lapse of time and because of the claims of the life beneficiary for apportionment of capital gains from the sale of certain securities and the proceeds of the sale of stock rights.

Evelyn S. Wilford, testatrix, died on October 22, 1916. By her will she created a trust of one-third of the residue of which her son, Jonathan S. Wilford, receives income for life, with remainder to his issue.

The account was filed on January 15, 1953. Objections were filed thereto, and the audit was continued pending a final determination of Warden Trust by the Supreme Court of Pennsylvania, concerning the applicability of the Uniform Principal and Income Acts of May 3, 1945, P. L. 416, and July 3, 1947, P. L. 1283, to the apportionment problems raised by the objections. Because of the lapse of time, a supplement to the account has been filed, bringing the accounting down to September 20, 1955.

The supplemental account shows a balance of principal of the trust of $151,211.97, composed of the bonds set forth on page 2 of said supplemental account, the shares of stock set forth on pages 2 and 3, a mortgage set forth on page 3, totaling altogether $146,-155.17, and cash; and a balance of income for distribution of $1,429.64.

Samuel H. High, Jr., was appointed guardian ad litem and trustee ad litem, as set forth in note of his appearance.

To assist the court in considering the apportionment problems presented, all of the parties have executed stipulations concerning the account and the supplement thereto, which stipulations set forth the relevant rules under which apportionment might be

made as well as all essential facts from which the calculations of the award may be computed.

The corporate accountant no longer contends that any of the claims of the life beneficiary are not apportionable transactions. The problem, therefore, is not whether apportionment should be made, but rather what rule or measure should be pursued to effect apportionment.

The gains were realized on 10 different stocks, all purchased by the trustees. Among the issues sold were 155 shares of Virginia Electric and Power Co. and 172 shares of Westinghouse Electric which may be regarded as typical in presenting the problem before the court. The pertinent facts relating to the 155 shares of Virginia Electric and Power Co. are as follows:

Purchase price ................ ..... $ 2,881.16
Book value per issuing corporation at
date of purchase ..................... $ 2,340.50
Sale price ........................ $ 3,913.16
Book value per issuing corporation at
date of sale ........................ $ 2,645.85
Relating to the 172 shares of Westing-
house Electric, the pertinent facts are:
Purchase price .................... $ 6,520.94
Book value at date of purchase ....... $ 6,621.34
Sale price ........................ $10,867.77
Book value at date of sale ........... $ 7,629.92

The parties have stipulated that with respect to the gains the issue is which of the following approaches is properly applicable:

1. Give income the amount by which book value on the date of sale exceeds book value on the date of purchase (limited, of course, to the actual gain).

2. Give income the amount by which book value at

time of sale (or the proceeds if they be less) exceeds cost (or book value at purchase if higher).

3. Give income the amount by which the proceeds of sale exceed the higher of cost or book value at the time of purchase (limited, however, to the increase in book value attributable to retained earnings during the holding period).

In my view, the result reached by approach no. 1 above is correct, although I would prefer to state the rule somewhat differently. I would express the rule to be that income is entitled to the amount by which the proceeds realized on the sale of a given share of stock exceeds intact value, which in the case of purchased securities would be their cost to the trust. Of course, this general rule must be modified by the qualification that the income portion may not exceed the amount of the retained earnings of the corporation during the holding period. This is another way of saying that income is entitled to any gain on the sale of the security to the extent that the issuing corporation has retained earnings during the holding period. The theory of the Pennsylvania rule is that the sale of the stock at a gain is but another method of obtaining the equivalent of a dividend from corporate earnings accumulated while the stock is held by the trustee. Therefore, it would make no difference in my view whether the purchase price and sale price were, for example, 80 and 100, and the book values at the dates of purchase and sale, 40 and 60. The entire gain would still be allocable to income unless it could be demonstrated that the gain did not result from the retention of the earnings which increase book value from 40 to 60. The presumption is that it did, and it would take an affirmative showing to demonstrate the contrary.

I realize that the question of what constitutes intact value in the case of a purchased security for the deter-

mination of the amount allocable to income when it is sold at a gain has not been definitely put at rest by the Supreme Court. In Arrott Estate, 383 Pa. 228, the Supreme Court decided that cost was intact value in the case of a purchased security when the question at issue was whether a stock dividend was allocable to income or principal. The court held that where a testamentary trustee in the course of administration purchases stock with funds from the corpus of the estate and the corporation declares stock dividends on the stock, the intact value required to be preserved for the remaindermen was the purchase price of the stock at the date of purchase rather than its book value.

To the same effect in the stock dividend case is Fownes' Trust, 3 D. & C. 2d 637.

Nirdlinger Estate, 290 Pa. 457, established the rule that in certain circumstances income beneficiaries are entitled to allocation of a portion of the proceeds of securities sold at a gain and this case has been sometimes analyzed as using purchase price as intact value for this purpose. The facts reported in the case, as well as in the opinion of the lower court, reported at 8 D. & C. 595, are somewhat sketchy, but they seem to indicate clearly enough that the trustees did acquire the investment that the trust's cost was used as intact value. However, it would further appear that the trustees actually organized the corporation whose securities were involved and that their outlay would also represent the book value of the stock they received. Accordingly, it would seem that the Supreme Court had not neither directly or by implication passed upon the question of intact value of purchased securities in a case involving apportionment of realized gains.

The question, however, has been presented to the Orphans' Court of Philadelphia in the unreported case of Roberts Estate, No. 317 of 1932, wherein the audit-

ing judge stated the following rule that: "The only equitable basis for apportionment between principal and income of the proceeds of the sale of stock where such stock is purchased by a trustee is to retain in the principal account the actual cost of the stock as intact value and to apportion to income only so much of the gain over cost as is represented by earnings accumulated during the period the stock was held. The amount of such accumulated earnings is to be determined by a comparison of the book value at the date of purchase with the book value at the date of sale."

I believe this to be a correct statement of the rule and to be a logical application of the analogies furnished by Arrott Estate, supra, and I therefore find that the total amount of $4,371.17 is allocable to income from the realized gain shown in the stipulations. . . .

And now, March 15, 1956, this adjudication is confirmed nisi.